BENEDICT and others *v.* ST. JOSEPH & W. R. CO. and others.

(*Circuit Court, D. Kansas.* November 30, 188?)

1. MORTGAGE OF RAILROAD PROPERTY — FORECLOSURE — WAIVER OF APPRAISEMENT — LAWS OF KANSAS.

Under section 3983 of the Compiled Laws of Kansas no order for the sale of railroad property mortgaged with a waiver of appraisement can be made by the court until the expiration of six months after the decree of foreclosure. This statute regulates the transfer of land within the state, and is therefore binding upon the federal courts.

2. SAME — APPOINTMENT OF RECEIVER.

After such foreclosure the income of the road, being the property of the bondholders for the liquidation of their claims, should be received by a disin-

terested trustee until the time of the sale; and the fact that certain of the bondholders are in possession, to the exclusion of others, is a sufficient reason for the appointment of a receiver, unless the interval between the decree and the sale is very brief.

In Equity.

*John F. Dillon, J. P. Usher,* and *A. J. Pappleton,* for Union Pacific Railroad Company.

*Wager Swayne, John Doniphan,* and *Melville Egleston,* for St. Joseph & Western Railroad Company.

*Winslow Judson,* for complainant.

*Woodson, Green & Burnes,* for receiver.

McCRARY, J. In this case a decree of foreclosure will be entered. We have carefully considered the motion for the appointment of a receiver. We are entirely satisfied that the St. Joseph & Western Railroad Company is insolvent, and that the property covered by the mortgages is inadequate security for the bonds secured thereby. The facts that no interest has ever been paid, that the debt is over $6,000,000, and that the current expenses have, until recently, about equaled the earnings, are sufficient upon this point. We are also clearly of the opinion that the road should not remain in the custody of the present management, which is in fact, if not in name, the Union Pacific Railway Company, unless a sale under the foreclosure can be had at an early day. The objection to continuing the present management for any protracted period of time is to be found in the fact that to do so would be to leave the mortgaged property in the hands of one set of bondholders, to be by them managed and controlled for themselves and another and hostile set of bondholders. The proof is satisfactory that there are two sets of bondholders,—the majority represented by the Union Pacific Railway Company, and a large minority whom that company does not represent. If a considerable time must inevitably elapse before a sale can be made and confirmed, we think the minority have a clear right to insist that the property shall, in the mean time, be in the hands of a disinterested party. It is not necessary to determine at present whether the charges of mismanagement made against the Union Pacific Company are sustained. It is enough to say that the holders of the minority of the bonds have a right to insist that the road shall not remain in the hands of an interest hostile to them.

This court is very reluctant to appoint a receiver, and we have considered very carefully the question whether, in justice to the interests in hostility to the present management, we can refuse to do so. If the time to elapse before the property can be transferred to a purchaser under a decree to be now rendered was not more than 60 or 90 days, we should not be willing to appoint a receiver for so short a period, and when the argument closed we were under the impression that there was nothing in the way of closing the sale and transfer within that period. But upon looking into the statutes of this state we find

a provision which seems to require in a case of this character a stay of execution for six months. The provision referred to is section 3983 of the Compiled Laws of Kansas, 1881, and is as follows:

"That if the words 'appraisement waived,' or other words of similar import, shall be inserted in any deed, mortgage, bond, note, bill, or written contract hereafter made, any court rendering judgment thereon shall order, as part of the judgment, that the same and any process issued thereon shall be enforced, and sales of lands and tenements made thereunder without any appraisement or valuation made of the property to be sold: provided, that no order of sale or execution shall be issued upon such judgment until the expiration of six months from the time of the rendition of said judgment."

Here the mortgages contain a waiver of appraisement, so that the case seems to fall clearly within the terms of the statute. This statute, in our opinion, confers upon mortgagors a substantial right, and if so, it must, we think, be respected and enforced by this court. It is the settled practice of this court to follow this provision of the statute in foreclosure cases. If the question were at all doubtful we should not be willing to take the chances of ordering the sale of property of the great value of that now in controversy, without following the statute and ordering the stay of six months which it requires.

It is contended that this statute has no application to a mortgage of railroad property, and *Hammock* v. *Loan & Trust Co.* 105 U. S. 86, is cited as supporting this condition. That case undoubtedly holds that the statute of Illinois providing for the redemption of real estate sold under a decree of mortgage foreclosure will not be followed by the federal courts of equity in that state in cases of the foreclosure of mortgages upon property, real, personal, and mixed, of a railroad company. The reason given for this ruling is that the property of such a company, consisting of real estate, personal property, and a corporate franchise, must be treated as a unit, and sold altogether, because, to attempt to divide it, and sell the real estate separately from the personal estate, would destroy its value. It is held that to apply the statute to such a case would leave the court with "no discretion, if the corporation or its judgment creditors so demand, except to order the sale of the real estate separately in parcels, when susceptible of division and subject to redemption, leaving the franchises and personal property to be sold absolutely and without redemption. Thus one person might become the purchaser of the real estate, another of the franchise, and still others of the personal property." Such a result, the court held, could not have been contemplated by the legislature. It was shown that among other consequences one person might acquire title to the real estate, another to the personalty, and still another to the corporate franchise, each being practically valueless without the other. It is evident that no such serious results will follow from a compliance with the statute of Kansas now under consideration. It relates only to the time when an execution or order of sale shall issue. It is always within the power of a court of equity, in foreclosure cases, to fix a time when a sale of the mortgaged prop-

erty may be had.  The complainants in the present case have no absolute right to an immediate sale even of the personal property and corporate franchises.  It is not, therefore, necessary, in order to follow the statute, that we divide and dismember the mortgaged railroad property.  The stay can be ordered as to the entire property and its unity thereby be preserved, and the statute at the same time enforced, and all rights under it maintained.

We are bound to follow the statute, since it is clearly a statute regulating the transfer of title to property in the state; unless, upon some such ground as that stated in *Hammock* v. *Loan & Trust Co.*, we can hold that it was not intended to apply to such a case as that now before us.  *McGoon* v. *Scales*, 9 Wall. 23; *Brine* v. *Ins. Co.* 96 U. S. 627.  Compliance with this statute must postpone the sale until it will probably be too late to obtain confirmation at the next June term.  If that term is passed a delay of one year is inevitable.  For reasons already suggested we cannot see our way clear to leave the property so long after default and decree of foreclosure in the hands of one portion of the bondholders, acting in hostility to another portion having equal equities.

The net income of the road, from this date, at least, (we decide nothing now as to past earnings,) is the property of the bondholders, and must be applied to the liquidation of their claims.  Whoever controls the property, and collects and disburses the earnings, from this date, must do so as a trustee of the bondholders.  The bondholders out of possession have a right to object to the collection and disbursement of this increase by other bondholders in possession and hostile in interest to them.  They have a right to insist that a disinterested representative of all the bondholders shall perform that duty.  The party to be left in possession and authorized to collect, care for, and pay over the income, being a trustee, and acting in a fiduciary relation, should have no personal interest in hostility to that of any of the *cestuis que trust*.  The amount of the net increase to be divided among bondholders will depend upon the amount of expenditures, what improvements and repairs are made, and the like.  Many questions must arise in the course of administration which should be decided by an unbiased representative of all the interests concerned, or by the court.  It might be to the interest of the bondholders in possession to make extensive improvements.  To this the bondholders out of possession might object.  If a receiver is appointed, the court can direct and control these matters.  As at least a year must probably elapse before a sale can be made and confirmed, we are constrained, most reluctantly, to appoint a receiver; but we give notice now that no delay that is not unavoidable shall be allowed in closing the receivership and delivering the property to the purchaser at the foreclosure sale; and, if possible, the sale shall be made and confirmed, and the property turned over, before the end of the year.

FOSTER, J., concurs.