SARAH M. MYGATT et al., as Surviving Trustees, etc., Appellants, *v.* GEORGE S. COE, Respondent.

One in possession of land merely, without other actual title, has an estate in the land which he may transfer, and in case he conveys with covenant of warranty running to the grantee, his heirs and assigns, he transfers an estate to which his covenant attaches, and it may be enforced by one succeeding to the grantee's title.

Certain real estate was conveyed by an assumed owner to the wife of defendant, severally and in her individual right. Defendant joined with his wife in a conveyance of the land, which contained a covenant running to the grantee, "her heirs and assigns," to the effect that the wife was seized of a full estate in the land. Defendant was at the time in possession and surrendered the possession to the grantee, and the grantors jointly received the consideration paid. The grantee executed a mortgage upon the land, and subsequently the owner of the equity of redemption was evicted by the true owners. The mortgage was thereafter foreclosed. In an action upon the covenant, brought by the purchasers upon the foreclosure sale, *held*, that the covenant ran with the land; that upon execution of the mortgage and subsequent conveyance, it went to the mortgagee and the owner of the equity of redemption in proportion to their respective rights; that by the foreclosure and sale the purchasers alone became entitled to sue upon the covenant, and so the action was maintainable.

*Mygatt* v. *Coe* (124 N. Y. 212), distinguished.

(Argued March 7, 1894; decided April 10, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made October 17, 1892, which affirmed a judgment in favor of defendant entered upon an order dismissing the complaint on trial at Circuit.

This action was brought to recover damages for alleged breach of covenants of quiet enjoyment and warranty in a deed executed by defendant and his wife.

It appeared that on July 15, 1858, Ebenezer L. Roberts and wife executed and delivered to Almira S. Coe, defendant's wife, a deed, which purported to convey "to her sole and separate use, and with the like effect as if she were unmarried," certain premises, into the occupancy of which

the grantee then entered and continued until she conveyed the same, on April 12, 1867, to Nancy Fisher, by a deed in which defendant, her husband, joined, and in which, after acknowledging the receipt of the purchase money by the grantor, they jointly made covenants to and with the said grantee, her heirs and assigns, of seizin, right to convey, against incumbrances, of quiet enjoyment, further assurance and warranty, the covenant of seizin being in these words:

"And the said parties of the first part, for themselves and their heirs, executors and administrators, do hereby covenant, grant and agree to and with the said party of the second part, her heirs and assigns, that the said Almira S. Coe, at the time of the sealing and delivering of these presents, is lawfully seized in her own right of a good, absolute and indefeasible estate of inheritance, in fee simple, of and in all and singular the above granted, bargained and described premises, with the appurtenances, free from all incumbrances, and hath good right, full power and lawful authority to grant, bargain, sell and convey the same, in manner and form aforesaid."

In December, 1869, Nancy Fisher mortgaged said premises to the plaintiffs herein as trustees of Sarah M. Mygatt, and in 1871 conveyed the property to one Fuller, who in 1874 conveyed it to one Leavitt. In November, 1878, the true owners of the premises in an action of ejectment evicted Mrs. Leavitt and went into possession. In December, 1878, a suit for the foreclosure of the mortgage to plaintiffs was brought, and on the sale therein the mortgagees became the purchasers, and being unable to obtain possession brought this action. Almira S. Coe died on January 3, 1884, before this action was commenced.

*Edward W. Grout* for appellants. Defendant had no reason to join in the conveyance, unless to become a grantor, as he did, and to connect himself with the title which in express words he warranted. (*Thompson* v. *Simpson*, 128 N. Y. 270.) He and his wife jointly made covenants of warranty and quiet enjoyment to the grantee, her heirs and assigns. (Pars. on

Cont. chap. 2, § 1.) But that the defendant's covenants, instead of ending at Mrs. Fisher, or going to her executors or personal representatives, were to go down to subsequent grantees, conclusively appears in that they are made not merely with Mrs. Fisher, but in express words with her heirs and assigns. (*Nye* v. *Hoyle*, 120 N. Y. 195; *Clement* v. *Burtis*, 121 id. 708; *Coleman* v. *Bresnahan*, 54 Hun, 619; *Andrews* v. *Appel*, 22 id. 429, 432; *Ernst* v. *Parsons*, 54 How. Pr. 163; *Boyd* v. *Belmont*, 58 id. 514; *Colby* v. *Osgood*, 29 Barb. 339; *Preiss* v. *Le Foidevin*, 19 Abb. [N. C.] 123; *Hart* v. *Lyon*, 90 N. Y. 663; *Peters* v. *Bowman*, 98 U. S. 56; *Lawrence* v. *Fox*, 20 N. Y. 268; *Gifford* v. *Corrigan*, 117 id. 257, 262, 265; *Van Schaick* v. *T. A. R. Co.*, 38 id. 346; *Barlow* v. *Meyers*, 64 id. 41; *Hand* v. *Kennedy*, 83 id. 149.) There seems to be a conclusive answer to any suggestion that the defendant's covenants of warranty and quiet enjoyment with Mrs. Fisher, her heirs and assigns, did not run down the chain of title to the last grantee, but stopped at Mrs. Fisher to go to her executors or personal assigns — to her general assignee for the benefit of creditors, for instance. If they did not so go down the chain, then after Mrs. Fisher (his grantee) made her conveyance, the defendant could have acquired the true title from the Howell heirs, and in the face of his said covenants with her, and her heirs and assigns of the land, ejected the last grantee. (*Thompson* v. *Simpson*, 128 N. Y. 270, 286; *House* v. *McCormack*, 57 id. 310; *Tefft* v. *Munson*, 63 Barb. 31; *White* v. *Patten*, 24 Pick. 324; *Trull* v. *Eastman*, 3 Met. 121–124.) The sense in which we say that the covenants of warranty and quiet enjoyment in conveyances of real property become attached to and run with the land is that they attach to and run with the title which the grantor assumes to convey, by sticking to the land as possession of it is successively delivered, though in fact the grantor is a stranger to the true title. (*Norman* v. *Wells*, 17 Wend. 136; *Hamilton* v. *Wilson*, 4 Johns. 72; *Nye* v. *Hoyle*, 120 N. Y. 195; *Hart* v. *Lyon*, 90 id. 663.) If the defendant be liable at all, the plaintiffs are

entitled to enforce that liability. (*Rector* v. *Mack*, 93 N. Y. 488; *Mygatt* v. *Coe*, 124 id. 212, 240.) The facts now shown of the defendant's possession, his conveying, his receiving the purchase price, his delivering possession, and his covenants of warranty and quiet enjoyment to the heirs and assigns of the grantee, create a privity between the parties upon which the plaintiffs can recover. (*Dexter* v. *Beard*, 130 N. Y. 549; *Clark* v. *Devoe*, 124 id. 120; *Beddoe* v. *Wadsworth*, 21 Wend. 120, 127.) That the defendant was in possession, assumed to convey title, and delivered the possession, is sufficient to make his covenants run with the land, and inure to the benefit of these plaintiffs. (*Slater* v. *Rawson*, 1 Met. 450; *Wilson* v. *Widenham*, 51 Maine, 566; *Dickson* v. *Desire*, 25 Mo. 151; *Field* v. *Squires*, 1 Deady, 366–389; *Wead* v. *Larkin*, 54 Ill. 489; *Slater* v. *Rawson*, 6 Met. 439.)

*W. S. Cogswell* for respondent. The judgment appealed from is right and should be affirmed. The subject-matter of this action is *res adjudicata*. (*Mygatt* v. *Coe*, 124 N. Y. 212; *McCracken* v. *Flanagan*, 141 id. 174; *Ganley* v. *T. C. Bank*, 98 id. 487; *Martin* v. *Rector*, 101 id. 77; *Parker* v. *Collins*, 127 id. 185; *Kavanagh* v. *Barber*, 131 id. 211.) If the covenants of the respondent ran with the land and passed to Nancy Fisher's grantees by her conveyance, the appellants never acquired any right to them. (Tiedeman on Real Prop. § 860; Willard on Real Estate, 414.)

FINCH, J. It is our duty to follow and abide by the decision of the Second Division of this court made in the case at bar when it was before them on appeal, so far as the facts found and the questions determined are identical. (*Williamsburgh Savings Bank* v. *Town of Solon*, 136 N. Y. 465; *Cluff* v. *Day*, 141 id. 580.) Reserving freedom of thought and action when the case becomes a precedent only, we must here and now, in the same action between the same parties, accept without criticism what has been decided. It is claimed, however,

that upon the last trial new evidence and new findings have totally changed the situation, and introduced questions not previously considered or decided, and that the plaintiffs may now succeed without in the least impugning or contradicting the prior determination. It is to such inquiry that our attention should be principally directed, and it may usefully be preceded by an examination of the points which must be deemed to have been involved in the prior decision.

Our brethren of the Second Division disagreed among themselves, (*Mygatt* v. *Coe*, 124 N. Y. 212), as was not strange in view of the fact that the question brought to their judgment a judicial quarrel almost as venerable as the common law itself, and open yet to vigorous dispute. (Rawle on Covenants for Title [5th ed.], § 203, note 2.) The majority of the court held; that privity of estate is essential to carry covenants of warranty to subsequent grantees so as to support a right of action by them against the original covenantor whenever evicted by a title paramount to his : that a covenant of warranty made by one having neither title nor possession, and so no estate in the land, will not run with it into the hands of subsequent grantees, but will stop where the privity of contract ends, and so at the first or original covenantee : and that the covenant of Coe, the husband, upon which this action is founded, was that of a stranger to the title, an independent and collateral warrantor, having and transferring no estate in the land, and so in no sense or degree a privy in estate with the subsequent grantees. The point of the decision is emphasized and made clear by the dissent of the minority. They advocated the doctrine that privity of estate is not always essential to carry the covenant down the line of successive grantees, and that one who conveyed nothing but covenanted much, like the prior of the convent who promised perpetual song to the manor chapel, might find his covenant attached to the land and running with it into the hands and for the benefit of successive owners : but while holding and defending this doctrine, Judge Brad-ley, who wrote the dissenting opinion, did not press the point,

or rely upon it as the ground of ultimate decision, but insisted
that Coe, the covenantor, was not a stranger to the title
because he joined with his wife as a grantor, and assumed to
unite with her in transferring to Mrs. Fisher the estate which
actually passed.  The precise point of disagreement was thus
over the attitude and position of the husband in making the
conveyance; and the decisive question became whether he did
or did not transfer an estate, some estate, to which his covenant
could attach, and run with it down the line of transfer.  The
facts which dictated the conclusion of the majority are care-
fully stated in the opinion of Judge FOLLETT, who expressed
their views.  He adverted to the circumstance that the deed
from Coe and his wife was not spread upon the record, and
might contain something not fully or accurately described in
the findings.  These, however, showed that the land was con-
veyed to Mrs. Coe by a deed from an assumed owner running
to her severally and in her own individual right; and that, while
her husband did join with her in the conveyance to Mrs.
Fisher, their covenant of seizin was — not that he was seized
or that they were seized — but that she was seized of a full
estate in the land.  While the joint grant indicated title in the
two and some estate in each, as the minority claimed, the form
of the joint covenant asserted seizin in the wife alone, which
the majority took for the truth.  To such last inference the
prevailing opinion awarded a predominant force for several
expressed reasons.  One was that the proof and the findings
failed to show any possession in Coe beyond a mere occupancy
by the sufferance of his wife, or any transfer of possession by
him to Mrs. Fisher.  The words of the opinion are these:
" The defendant having no estate, title or interest in or pos-
session of the land conveyed, there could be no privity of
estate between him and Nancy Fisher."  A second reason
was that it did not appear that Coe received any part of the
consideration paid by the grantee.  The language of the
opinion in this respect is: " And it was conceded on the argu-
ment in this court that it does not appear whether the defend-
ant received the whole or any part of the consideration of the

deed." It is thus obvious that the inference of neither title nor possession in Coe, the husband, drawn from the form of the covenant of seizin, was allowed to prevail because no other fact in the record necessarily contradicted it.

But now three such facts make their appearance in the findings, and force from us a different inference. Referring to the deed from Coe and his wife to Mrs. Fisher, the tenth finding of fact is as follows : "That when the said conveyance was so made and delivered the defendant was in possession of the said real property, consisting of a plot of land with a dwelling house thereon, being there domiciled and residing with his family ; " and the eleventh finding is : "That upon the execution and delivery of the said conveyance, the defendant moved out of the said premises, and surrendered the same to the said grantee, who thereupon went into possession of the same." We do not and cannot know upon what proof or upon what facts these findings were based, for none of the evidence given is contained in the record. We are obliged to assume that sufficient and competent proof produced them, and that they are in all respects strictly true. Nor can we narrow or modify them by recurring to the form of the covenant and of the deed running to Mrs. Coe alone. At best these only raised certain presumptions, but presumptions existing from the absence of any contrary facts. Coe's covenant that his wife was seized, justified the presumption that he had no possession, and the maxim that possession follows the deed is expressive only of the presumption which the law raises when there is no proof of the actual facts. (*Frantz* v. *Ireland*, 66 Barb. 389.) But these presumptions give way before the proven truth. They fall when the facts themselves are shown, and we cannot indulge a presumption that Coe was not in possession in the face of a finding that he was, or that he did not transfer the possession to Mrs. Fisher, when the explicit finding is that he did. I tried for a time in my reflections to think that the learned trial judge may have used the word "possession" in the improper but harmless sense of occupation, but swiftly saw that I had no warrant to change his

words, and that there could be no doubt that he used them carefully, and in their full legal significance; for the circumstances strongly point to that as the truth. The case had been before the Second Division. Both opinions pointed out the vital importance of the inquiry whether Coe had possession or transferred it to Mrs. Fisher, and the action was re-tried and the present findings made in the full light of those opinions. It is not conceivable, under such circumstances, that the learned trial judge carelessly or inaccurately found as a fact that Coe was in possession, or failed to appreciate the full force of the finding. And that is made more obvious by the fact that in the second finding the wife is said to have entered into the "occupancy" of said premises and continued "in such occupancy" until her conveyance. When the learned trial judge, with his attention fully drawn to the significance of his words, has found that the husband was in possession and the wife an occupant merely, by what right shall I or any of us reverse his finding into one that the wife was in possession and the husband only an occupant? We are bound by the finding and must give it the full and lawful force which belongs to it. If on a third trial the fact is found the other way, and should compel a different decision at our hands, it will not be the first time that contradictory findings of fact have enabled ignorance, supposing itself to be wisdom, to charge upon us a seeming inconsistency; but the circumstance will not alter our duty in the least.

A second fact now appears, the absence of which was noted in the prior decision. The answer of the defendant alleges that no consideration was paid to or received by him for "uniting with his wife" in the deed to Mrs. Fisher. But he did not prove that allegation on the trial, for there is no finding of that fact, and not even a request to find it. On the contrary, the deed which he executed is now transcribed in the findings, and it contains the explicit admission that the consideration of eighteen thousand five hundred dollars was "to them in hand paid," that is, to the two parties, to the husband and wife both.

At this stage of the case the facts stand thus : That at the date of the conveyance to Mrs. Fisher neither Coe nor his wife had a valid title to the land ; that he was in possession and his wife occupied the premises with him ; that she had color of title but he not even that; that the two assumed as joint grantors to convey the land to Mrs. Fisher; that Coe delivered the possession to her, which was the only estate which either grantor had or which they could convey, and that Coe shared in the purchase money paid for the grant.    On that state of facts I do not see how it is possible to say that Coe was a stranger to the title, or transferred no estate to which his covenant of warranty could attach.

But before pausing upon that proposition I should bring into the discussion the third new fact which makes its appearance for the first time.    That is, that in and by the deed, Coe explicitly, and in terms, covenanted not only with Mrs. Fisher, but with her " heirs and assigns."    In other words, he meant and intended his covenant to protect not only her, but also those who should come after her by succession to the ownership of the same land.    The significance of those words will better appear if we refer back to the early history of these covenants.    Originally, the common law did not permit the assignment of things in action, and it followed that a covenant, regarded from the direction of a contract, could not pass beyond the covenantee.    But the old warranty seems to have been viewed rather as an incident of, and as belonging to the estate conveyed, and so attached to that estate as to go with it when transmitted.    It could not pass to assigns as an independent contract, but by its connection with an estate in land, became transmissible with it.    Out of that peculiarity sprang the necessity of privity of estate to enable the subsequent assignee to vouch, or call on his predecessor for protection ; but it was an element of the doctrine that neither the heir nor the assign of the grantee could take advantage of the warranty unless expressly named.    (Rawle, § 203.)    As was said, if one " warrant land to a man and his heirs without naming assigns, his assignee shall not vouch."    (Co. Litt. 384 b.)    That rule

was not applied when the warrantor, instead of substituting other lands, became bound only to respond in damages; but while the necessity has disappeared, the actual use of the words continues to indicate the purpose and intent of the warrantor that his covenant shall not stop with the covenantee, but operate for the benefit of his grantees; and though the use of the words, possibly, may not dispense with some privity of estate, they show that the warrantor regarded himself as making and intending to make a covenant running with the land, and that in holding him to that responsibility we do not put upon him a liability which he did not contemplate. The force belonging to such words is indicated in many recent cases, (*Nye* v. *Hoyle*, 120 N. Y. 203; *Coleman* v. *Bresnaham*, 54 Hun, 622; *Hart* v. *Lyon*, 90 N. Y. 663); and while they are more important and bear more heavily upon the theory that a covenantor having no estate, may by his own special and intended contract, attach his covenant of warranty to the estate of another so as to run with that estate, yet they are entitled to weight and consideration also upon the narrower inquiry whether the defendant here is or is not to be deemed an entire stranger to the title, and they yield an inference which balances somewhat that drawn from the covenant of seizin.

And thus it is apparent that the facts in the present record differ in material and essential respects from those presented on the previous appeal. It is certainly the law of this state that one in possession of land merely, without other actual title, has an estate in the land which he may transfer to a grantee, and which is sufficient to carry with it his covenant of warranty down the line of succession. That was explicitly held in *Beddoe's Ex'r* v. *Wadsworth* (21 Wend. 124), and I have found no case in this state to the contrary, and no reason to doubt the soundness of the doctrine. We have here then a situation in which the defendant was in possession of land and so had an estate in it; where he assumed to transfer it as grantor by deed; where he transferred his possession to the grantee; where he received in exchange some part or the whole of the consideration of the grant; where his wife, who

Opinion of the Court, per FINCH, J.          [Vol. 142.

joined in the deed, had no better title than his, whatever he may have thought about it; where he meant and intended that his warranty should run to assigns and expressed that intention on the face of his covenant. It is impossible, on such a state of facts, to deem him a stranger to the title and merely an independent covenantor. We must hold that he had and transferred an estate to which his covenant of warranty could and did attach, and in so holding we contravene nothing which was decided on the previous appeal.

Mrs. Fisher, in December of 1869, mortgaged the premises conveyed to her by Coe and wife to the trustees of Sarah M. Mygatt, and in 1871 conveyed the property to Fuller, who in turn conveyed it to Clara B. Leavitt by deed dated in 1874. In November of 1878 the true owners, in an action of ejectment, evicted Mrs. Leavitt and went into possession. In the following December suit was brought on the Mygatt mortgage for a foreclosure, and on the sale in 1879 the mortgagees became purchasers and received the referee's deed. Since the covenants ran with the land, and those of them which were prospective were not broken and turned into mere rights of action until after the delivery of the mortgage to the Mygatt trustees, and the deed of the equity of redemption to Fuller and Mrs. Leavitt, it becomes necessary to determine to whom the covenants ran as between the mortgagees on the one hand and the grantees of the mortgagor on the other. That has been sometimes a difficult and troublesome question, and logically is so yet, although I deem it substantially settled. Under the old system which regarded the mortgage as transferring to the mortgagee the entire legal estate, leaving in the mortgagor only an equity which courts of law could not recognize, it was necesssary to say and was said that the covenants running with the land followed the legal estate into the hands of the mortgagee where it remained entire and complete, and the grantees of the equity having no legal estate could have no right to the covenants which already belonged to another. It was so held in *Mayor of Carlisle* v. *Blamire* (8 East, 487), but the injustice of the doctrine drew upon the ingenuity of equity

to supply a remedy, and where the grantee holding covenants had executed a mortgage, and thereafter having been evicted from the premises by a paramount title, his grantor and covenantor settled with the mortgagee by paying the mortgage in full discharge of the covenants and so assuming to cancel them, the grantee was allowed by a decree in equity to sue the covenantor at law, and the latter was restrained from setting up as a defense in any manner the deed or deeds of mortgage which had diverted the covenants from the main line of succession. (*Thornton* v. *Court,* 3 De Gex, M. & G. 293.) By this circuitous route the just result was reached of dividing the benefit of the covenants between mortgagee and owner of the equity of redemption according to their respective rights, and the same just distribution is effected under our system by a different process. We regard the mortgagor as retaining the legal estate and the mortgagee as having a lien upon it for his security. The covenants, therefore, run to both mortgagee and grantee of mortgagor in proportion to their respective rights, and the covenant is divisible accordingly. A very clear exposition of this doctrine will be found in *White* v. *Whitney* (3 Met. 87), and it has been asserted in this state in *Town* v. *Needham* (3 Paige, 546) and *Andrews* v. *Wolcott* (16 Barb. 25). By the foreclosure of the mortgage the purchasers at the sale have become alone entitled to sue upon the prospective covenants contained in the deed given by Coe, and on the facts now before us can successfully maintain the action upon the ground that there does exist between them and the covenantor a privity of estate.

Whether, without that, the covenantor would still be bound upon the theory that by his contract he consciously and intentionally attached his covenants to the land of his wife, and privity of estate with the original covenantee alone is sufficient, it is not necessary at present to decide.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.