McAdam, J.
The decision by the second division of the court, of appeals (122 N. Y. 505; 34 St. Rep. 346), authoratively settles the law of this case (Cluff v. Day, 141 N. Y. 580; 60 St. Rep. 321; Williamsburgh Sav. Bank v. Town of Solon, 136 N. Y. 477; 49 St. Rep. 840; Terry v. Wait, 56 N. Y. 91), and is conclusive as establishing in the defendants: (1) The right to use the shaft and breaker to mine coal from the surrounding lands concurrently with the mining in the Genet land. 122 N. Y. 524; 34 St. Rep. 346. (2) The right to connect the workings in the Genet land with the workings in the surrounding lands. 122 N. Y. 526, 530; 34 St. Rep. 346. (3) The right to drain water to the Mar-vine shaft, and thence pump it to the river. 122 N. Y. 527, 528; 34 St. Rep. 346. (4) The right to pile the clum on the surface of plaintiff’s land. 122 N. Y. 525; 34 St. Rep. 346. (5) The right to mine from the farm. 122 N. Y. 526; 34 St. Rep. 346. (6). The right to maintain and use the shaft, breaker, and other structures as they were in 1886, and now are.
There is nothing in the judgment or opinion of the court of appeals in the subsequent action reported in 186 IT. Y. 602 ; 50 St. Rep. 53, which in any way qualifies or limits what was actually-decided by the second division. In considering what was actually decided by the court, Judge Finch says:
“ The first cause of action failed because there was no proof,, except that offered by paroi, of the assumption by defendant of any such obligation; and the second, because whatever was done was held to be within the explicit terms of the contract itself. Thus the right to use the shaft and machinery on plaintiff’s land in aid of mining operations on adjoining lands was held to be expressly given as a present right by the terms of the instrument; the right to pile clum and waste upon the surface was found in-its express permission ; and the right of drainage through the gangways opened to other shafts to the lower point of the Mar-vine shaft, to be thence pumped out to the river, was deducted from the terms and conditions of the contract.”
The plaintiff’s right to relief depends upon whether the defendants have been guilty of acts which put an end to the contract, and entitled the plaintiff to judgment declaring the contract terminated. Most of the acts complained of are referred to in the decision cited (122 N. Y. 503; 34 St. Rep. 346), and were held to be privileges which the defendant acquired under the contract,, *362 and had a right to exercise. The plaintiff’s right has in this manner been reduced to the allegation that the coal upon her land has been exhausted within the meaning of the contract, which has by its terms expired. As matter of fact, it clearly appears that the -coal upon the plaintiff’s land has not been exhausted, and there is no equitable ground upon which the contract can on that theory be held to be at an end. Indeed, until the coal upon the plaintiff’s land, is, in point of fact, exhausted, the contract by its terms is to continue, and this whether the defendants coal mine upon the plaintiff’s land, or entirely cease mining operations thereon. The contract expressly permits the cessation of mining on plaintiff’s land by providing that, if no coal be mined thereon', the defendants shall make to her a payment for 20,000 tons a year; and so long as they make this payment they are, under the agreement, entitled to use and enjoy the rights and privileges granted, and the openings, buildings, fixtures, and appurtenances made and-constructed for mining, preparing, and forwarding coal on plaintiff’s land, as well as for mining, preparing, and forwarding •coal from the adjoining or contiguous lands. The right to use the plaintiff’s land for .the mining of coal on adjoining and contiguous land is not limited by the agreement to any particular time. It is to continue until the coal on the contiguous land is -exhausted. It does not depend upon the amount of coal taken from the plaintiff’s land. To insert in the contract a provision that this right shall not be exercised till all the coal on plaintiff’s land is mined would be to make a new contrat for the parties and not construe the one already made. The rights assumed by the defendants were either expressly conferred by the contract or were incidental to their exercise and therefore necessarily implied. Some of the acts charged might, if wrongfully performed, furnish ground for legal action. They do not rise to the dignity of breaches which would authorize the court to declare the contract judicially rescinded. Such a determination, with a decree requiring the defendants to remove from the lands all their apparatus, etc., and to surrender the premises to the plaintiff, would, in •effect, be to enforce an action of ejectment from lands in Pennsylvania,—a jurisdiction which this court could not assume; the rule being that actions for the possession of real property must be brought in the forum rel sitae. Equity acts in personam where the parties are within the jurisdiction of the court, though the lands be in another state, but not to the extent of awarding relief more appropriately obtainable in a common law action of ejectment triable by a jury of the vicinage.
Without going further, these conclusions lead to a disttiissal of the plaintiff’s bill. But the importance of the issues presented suggests another proposition requiring notice. The defendants claim that the contract relates to coal in place, and concerns property in immovables, and that all questions touching such property and the forms of conveying it are governed by the lex situs. West! Priv. Inf. Law, § 156; Whart. Confl. Laws, § 278 ; Story, Confl. Laws, § 424. This presents the question of title under the *363 agreement!" Blackstone, in his Commentaries (Cooley’s Bl. Comm, p. 18), says :
“ Land hath also, in its legal signification, an indefinite extent, upwards as well as downwards. 1 Gujus est solum, ejus est usque md coelum,' is the maxim of the law. Upwards, therefore, no man may erect any building, or the like, to overhang another’s land ; and downwards, whatever is in a direct line' between the surface ■ of any land and the center of the earth belongs to the owner of the surface, as is every day’s experience in the mining countries. So that the word ‘land’ includes not only the face of the earth, but everything under it or over it. And, therefore, if a man grants all his lands lie grants thereby all his mines of metal and other fossils, his woods, his waters, and bis houses, as well as his fields and meadows.”
In mining districts parties may, and frequently do, sever the ownership of the suface from that of the underlying mines. MacSwinney on Mines (page 27) says:
“ The right of property in the surface and in the underlying mines may be shown to be in different hands. Nothing is more common than to sell or demise a piece of land excepting the mines, or to sell or demise a piece of land excepting the surface. * * * In pke manner the different strata of the subsoil may be shown to be the subjects of different rights. Where the surface and the underlying mines, or the different strata of the subsoil, are differently owned, they are separate tenements, with all the incidents of separate ownership. And the mines or each stratum may be held in fee simple or fee tail or otherwise, as in ábe case of surface property.”
See, also, 2 Broom & H. Comm. 16.
Where coal is severed from the freehold it may, like timber or other product of the soil, become personal property; and no one would claim that a ton of Pennsylvania anthracite coal on a wharf or in a coal yard would be regarded, for legal purposes, as Pennsylvania land. But where, as in this instance, the contract relates to coal buried in the earth, and forming part of it, and the right to it is exclusive in the grantee, it must, for legal purposes, be regarded as real estate. The proposition that the law of the place where real property is situated determines all questions relating to its transfer is elerhentary. The correct application of it to the present case, however, gives rise to differences of opinion. The theory of the plaintiff is that the instrument is an executory contract, personal in its nature, formally executed in the city of New York by the plaintiff, a resident thereof, and by the defendants, a domestic corporation ; and that it is to be construed with reference to the law of New York alone. The defendants claim that it is an executed conveyance of land, and as such governed by the lawrs of Pennsylvania. To which law, then, must reference be had to determine the character of the instrument? The rule which subjects a contract made in one state concerning land in another state to the law of the place where the land is situated is not confined in its operation, to the formal execution of the deed, but extends to and includes all questions as to its con *364 struction and interpretation. Nicholson v. Leavitt, 4 Sandf. 252, 276; Monroe v. Douglass, 5 N. Y. 447; Abell v. Douglass, 4 Denio, 305; McGoon v. Scales, 9 Wall. 23; Brine v. Insurance Co., 96 U. S. 627, 636. Not only must resort be had to the lex situs to determine the construction and legal effect of a deed, but also to determine whether the subject-matter of the instrument is real or personal. Chapman v. Robertson, 6 Paige, 627,. 630. See, also, Holbrook v. Bowman, 62 N. H. 313; Cronson v. Lumber Co., 44-Minn. 458. The question, being one of foreign law, must be determined by tire court upon the evidence presented in the same manner as any other question of fact. Code, § 942; Monroe v. Douglass, 5 N. Y. 447; Kline v. Baker, 99 Mass. 254; Ufford v. Spaulding, 156 id. 65; Concha v. Murrieta, 40 Ch. Div. 543. In Nelson v. Bridport, 8 Beav. 527, Langdale, M, R. says:
“ The rule of English law that no knowledge of foreign law is-to be imputed to an English judge sitting in a court of only English jurisdiction is undoubtedly well founded. And as cases arise in which the rights of parties litigating in English courts cannot be determined without ascertaining to some extent what is the foreign law applicable to such cases, the foreign law and its application, like other results of knowledge and experience in matters of which no knowledge is imputed to a judge, must be proved, as facts are proved, by appropriate evidence,—i. e., by properly qualified witnesses, or by witnesses who can state from their own knowledge and experience gained by study and practice, not only what are the words in which the law is expressed, but also what is the proper interpretation of those words, and the legal meaning and effect of them as applied to the case in question.”
The true rule to follow in cases depending on the laws of a particular state is to adopt the construction which the courts of that state have given to those laws. Ang. Lira. (6th ed.) § 24; Elmendorf v. Taylor, 10 Wheat. 152, 159; Bell v. Morrison, 1 Pet. 351, 360; Leffingwell v. Warren, 2 Black, 599. The reason for the rule is that the courts of every state and country must be presumed to be the best expositors of their own law and of the terms-of contracts made with reference to them ; and as Judge Story observes:
“No court professing to be governed by principle would assume the power to declare that a foreign court misunderstood the laws-of their own country.”
Judge Gray, in Kline v. Baker, supra, says:
“When the evidence consists of the paroi testimony of experts as to the existence or prevailing construction of a statute, or to any point of unwritten law, the jury must determine .what the foreign law is, as in the case of any controverted fact depending upon like testimony (citing cases) When the evidence admitted consists entirely of a written document, statute, or judicial opinion, the question of its construction and effect is for the court alone.”
See, also, Ufford v. Spaulding, supra.
Whether the proof of the foreign laws must be made to the court rather than the jury, as intimated by Greenleaf (volume 1, § 486), and incidentally in the notes to Phillips on Evidence (vol *365 ume 2, pp. 433, 434), is of no consequence, as the trial here is by the court alone. The oral testimony of witnesses learned in the peculiar system of law to be proved is competent as showing what the real rule is, as the result, not of one particular statute or decision, but of the whole course of exposition, interpretation, and adjudication. Baron de Bodes Case, 8 Q. B. 250. In Trimbey v. Vignier, 6 Car. & P. 25; Bosanquet, J., expressed the opinion that, if a foreign statute has received a thorough local construction by repeated judicial decisions, a professional witness of the foreign country may be asked what is the law on that subject. This, notwithstanding the rule that the statute or written law of foreign states should be proved by the law itself. The unwritten law may always be proved by witnesses instructed therein. Francis v. Insurance Co., 6 Cow. 429; Wood, Prac. Ev. § 209. The Code of Civil Procedure (section 942) expressly provides that "the-unwritten'or common law of another state, or of a territory, or of a foreign country, may be proved, as a fact, by oral evidence.” Books of reports and judicial decisions are considered part of the unwritten or common law. 1 Cooley’s Bl. Comm. p. 63; 2 Phil. Ev. (Cow. & H. Motes) p.-485; Code, § 942. The expert testimony, when received, cannot be arbitrarily disregarded, but, like other competent evidence, must be considered and accorded that respect and probative force its character and weight require.
The second division of the court of appeals (122 N. Y. 527; 34 St. Rep. 346) held that:
‘‘The words of the contract under consideration which operate to convey the coal are that the parties of the first part ‘doth hereby release unto the said’ party of the second part ‘all the coal contained in, etc., together with the right to enter upon said lands, and dig, mine, and remove said coal;’ and the legal effect of such .conveyance was to vest in the defendant an estate in fee in the coal as a separate piece of land."
The first division of the court of appeals, in construing the same agreement (136 N M. Y. 593; 50 St. Rep. 53), held that it did not operate as a conveyance of the coal veins or strata; that its subject-matter was mineral product, not land ; and that the contract was executory in its nature. In this instance the question came up on demurrer to the complaint, so that the law of Pennsylvania was neither pleaded nor proved, and the construction placed upon the agreement was one purely of law, not depending, as now, upon expert evidence, which introduces a new element,—i. e. one of fact. The last-mentioned judgment is in no respect an adjudication upon any question of fact, and the court that rendered it seems prompt to reject the plea of res adjudicada, even with respect to its own judgment, when, upon a second part, a different state of facts is developed, Mygatt v. Coe, 142 N. Y. 78, 85; 58 St. Rep. 408; Gray v. Green, 142 N. Y. 316, 319; 59 St. Rep. 5. Mew facts may present an old case in a form requiring the application of principles so essentially different from those applied in a previous instance as to lead to results directly opposite to those arrived at in the previous record. In 122 N. Y. 505; 34 St. Rep. *366 346, the case came before the second division on the facts ; and, as the facts on both sides were presented, the court was not limited by the allegations of the complaint and those alone. On this trial the defendant pleads the law of Pennsylvania as a fact, and has proved it by the testimony of judges on the bench of the highest court in that state, to wit, Chief Justice Paxsox, Judges Hall and He yd RICK,—jurists who have taken part in some of the decisions of that state determining the rights of parties under what are known as “coal leases,”—and these experts agree that the particular instrument in controversy, tested by the rules of Pennsylvania law, is a conveyance in fee of the coal in place as laud, and that immediately on its delivery title to the coal vested in the defendants. They testify that the tests which determine a particular instrument to be a conveyance in fee of the coal as a parcel of land are: (a) It must relate to all the coal, (b) The right to mine and take the coal must be exclusive of the grantor, (c) The grantee must agree-either to mine all the coal or pay for it if not mined. If the instrument in question contains these characteristics, it is, in legal effect, a grant in fee of the coal as land. For the purposes of these rules, the.word “lease” is deemed an apt word of conveyance. The contract in question contains the three elements stated by the experts, and is, acccording to their testimony, clearly a grant in fee. Whether it is to be denominated a base or terminable fee—that is, an estate which ends as the coal is removed—-is of no consequence, so far as the determination of the present contention is concerned. The law of Pennsylvania as to the construction and effect of coal leases has been worked out step by step by the courts of that state in a. long line of decisions. It is not our purpose to construe these, but to accept the interpretation placed upon them by experts best qualified to judge of their legal effect and meaning. This court would hesitate to put its opinion as to the law of Pennsylvania against the weight of evidence thus offered, and on this testimony and the reported decisions produced, it finds, as a matter of fact, that the law of Pennsylvania is, as stated by the experts produced by the defendants, that the instrument sued on is a grant, and not. a mere executory contract, as asserted by the plaintiff. The-books of cases adjudged in a foreign state are presumptive evidence only of the unwritten or common law thereof (Code § 942) ; and such presumption, like any other, may be rebutted, limited,, or explained by other competent or more reliable proof. The expert evidence has been considered with reference to the reported adjudications, and no inconsistency impairing its value has been, found. Indeed, the construction placed upon the law of Pennsylvania by the jurists who testified to such law agrees with the* opinion expressed by our own second dvision, which is some evidence at least of its reliability.
The plaintiff does not seek to reform the contract, nor to compel the defendants to a more energetic performance on their part, but to terminate their rights under it, and compel them to surrender possession of the property by enforcing the performance of acts which would accomplish that result. She is not entitled to- *367 the equitable relief claimed, and for the reasons stated the complaint must be dismissed upon the merits, with costs.
Complaint dismissed, with costs.