## McGoon v. Scales.

1. A sale of the public land for State taxes while the land is still owned by the United States is invalid.
2. The law of the State in which land is situated, governs its alienation and transfer, and the effect and construction of deeds conveying it, wherever they may be made.
3. The statute of Wisconsin of 1850 abolishes all passive trusts which require no duty to be performed by the trustee, and vests the title in the *cestui que trust.*
4. The statutes of Illinois of March 1st, 1847, and those previous thereto, and the deed of the late Bank of Illinois made under them to close its affairs, left the real estate of the bank liable to execution for its debts.
5. The proceedings of a creditor of the bank to subject such real estate lying in Wisconsin to the payment of its debts, had in the courts of Wisconsin, must be governed by the laws of that State made for such cases.
6. The State of Wisconsin had a right to pass laws to subject such lands to the payment of the debts of the bank, though the corporation had ceased to exist as such by the laws of Illinois. The only limitations on the right of the legislature to prescribe the mode of doing this, being the Constitution of the State and of the United States.
7. A sale made to one not a party to the suit, under a judgment or decree, will be valid, though the judgment may afterwards be reversed.
8. If the court rendering the judgment had jurisdiction, and the officer who sold had authority to sell, the sale will not be void by reason of errors in the judgment or irregularities in the officer's proceedings, which do not reach the jurisdiction of the one or the authority of the other.

ERROR to the Circuit Court for the District of Wisconsin; the case, or the only parts of it, which the court deemed it necessary to notice, being thus:

McGoon brought ejectment against Scales in the court below for a piece of land in *Wisconsin Territory,* which the United States had granted to one Gear. Both parties claimed under Gear.

The defendant Scales's title, which it will most conduce to clearness to consider first, was thus:

On the 2d of November, 1842, Gear and wife conveyed the land in question to James Campbell as trustee of the State Bank of Illinois, and though the patent from the United States issued to Gear ten years later, it is conceded

by both parties that its effect was to make good the title conveyed by him to Campbell. The deed, after reciting that Gear was indebted to the bank in the sum of fifty thousand dollars, to satisfy which debt the bank had agreed to take the real estate mentioned in the deed, conveyed the land to Campbell, who was to stand seized of the premises upon the trust and confidence that they should be sold by him for such a sum as should be directed by the bank, and the proceeds applied to the sole use and benefit of the bank; and if not sold, then that Campbell was to stand seized to the use of the bank and its assigns.

Campbell did not sign the deed nor accept the trust otherwise than by silence.

In 1850 the legislature of Wisconsin passed a statute which abolished uses and trusts except as preserved in the act. One of the provisions of the statute was that—

" Every person who, by virtue of any grant, assignment or devise, now is or hereafter shall be entitled to the actual posses·sion of lands, and the receipt of the rents and profits thereof in law or equity, shall be deemed to have the legal estate therein."

Other provisions of the statute defined the only cases in which valid express trusts might be made.

On the 31st October, 1848, the bank made a conveyance of the lands to Manly, Calhoun, and Ridgely for the benefit of the creditors of the institution and for the payment of its debts. The deed, however, was special in form, and made under circumstances which it is necessary to state. For many years before it was made the bank had been embarrassed, and several statutes were passed by the legislature of Illinois for the purpose of enabling and compelling it to close its business and pay its liabilities. The last of these, approved March 1st, 1847, required the officers of the bank, if they should not have closed up its affairs prior to the 1st day of November, 1848, to turn over to three persons to be named by the governor, all the property, rights, and credits of the bank, when the trustees were to proceed to wind up its affairs. The

governor, under this act, named Manly, Calhoun, and Ridgely as the persons to take charge of the bank, and on the day before the power of the bank to act ceased by law the conveyance we have mentioned was made by order of the board of directors. In this deed of conveyance they recited that it was made in pursuance of the act of March 1st, 1847, and for the purpose of carrying into effect its provisions, and that it was made to those persons because they had been so appointed by the governor under that act.

The last section of the act just referred to, after that previous section of it, and, indeed, previous statutes had fully defined the duties and powers of these trustees, declared that " the real estate of said bank shall be liable to taxation and sale on execution in the same manner as the property of individuals."

In this state of things, a statute of Wisconsin having declared that " lands, tenements, and real estate holden by any one in trust for another, shall be liable to debts, judgments, decrees, executions, and attachments against the person to whose use they are holden," one Henry Corwith, in August, 1853, commenced a suit in the State court of Wisconsin against the State Bank of Illinois, and attached these lands. Manly, Calhoun, and Ridgely entered an appearance to the suit, and moved to dissolve the attachment; and the bank, by its attorney, appeared and defended the suit.

Under these proceedings (the legislature of Wisconsin having made provision by special statute for a case in which a bank, whose functions had ceased, but which yet owned property, and owed debts in Wisconsin, might be sued and the property subjected to the payment of those debts), Corwith got judgment; and by a writ of execution, which had no seal at the time, though one was afterwards put by order of the court, upon motion to amend, sold the land to one Earnest (no party to the suit), who transferred his certificate to Scales, the defendant. The judgment under which this sale was made was afterwards set aside; but after many efforts in the State courts to set aside this *sale*, it was finally affirmed

in the courts of Wisconsin, including the Supreme Court, and the defendant, Scales, received the sheriff's deed on that sale on the 17th March, 1868.

Such was the defendant's title. The plaintiff claimed under several different titles. Among them was:

1st. By deed of quit-claim from Gear, dated January 17th, 1867.

2d. By deed dated July 12th, 1865, from James Campbell, trustee under Gear's trust deed of November, 1842.

3d. By deeds under tax sales, in 1849, from the clerk of the board of supervisors of the county in Wisconsin where the lands were, to the county, and from the county to him, McGoon, the plaintiff.

The court below told the jury that the defendant's title was the true title, and the verdict and judgment having gone accordingly, the case was now here for review.

*Messrs. Carlisle and Magoon, for the plaintiff in error,* contended,

That the deeds under the tax sales, in 1849, of themselves passed title.

That Gear's deed of trust to Campbell vested the estate in Campbell alone; that the estate was not a dry estate, but an active trust, and the trustee's title in ejectment good against the world. The recent and as yet unreported case of *Goodrich* v. *City of Milwaukee*, in the Supreme Court of Wisconsin, on which the counsel much relied, showed this, as they argued. Accordingly, the Wisconsin statute of 1850 had not vested the estate in the bank, but it remained in Campbell, and by his deed of 1865 passed to McGoon.

Even if this were not so, that the bank, by its general assignment of 31st October, 1848, had passed the lands to those trustees, and that nothing remained on which Corwith's attachment of 1853 against the bank could operate.

That, independently of all these, the bank, in 1853, was dead in law, its charter having expired, and itself having assigned all its estate.

That the judgment under which the sale was made was reversed, and that the sale made under it fell accordingly.

That the execution had no seal, a defect which by common law and the statutes of Wisconsin made the writ void.*

Mr. Justice MILLER delivered the opinion of the court.

The shortest and most satisfactory mode of showing the reasons for our judgment is to examine the title of defendant, which the jury were told was the true one.

If the attachment proceedings conveyed a good title, it must prevail; and we proceed to an examination of some of the objections to it.

1. It is claimed that the land was sold for State taxes in April, 1849, and that the title under that sale became vested in plaintiff.

The answer to this is, that the land was then owned by the United States and was not subject to State taxation, the sale to Gear having been made in 1851, and the patent issued in 1852.

2. It is claimed that at the time the attachment in favor of Corwith was levied on these lands, in his suit against the State Bank of Illinois, they were not subject to attachment and sale for the debts of that institution.

In establishing this proposition it is first asserted that the legal title never vested in the bank.

The deed from Gear to Campbell, in our judgment, did vest the legal title in the bank after the act of 1850. It is a principle too firmly established to admit of dispute at this day, that to the law of the State in which land is situated must we look for the rules which govern its descent, alienation, and transfer, and for the effect and construction of conveyances.

The effect of the statute of Wisconsin, passed in 1850, was to abolish all passive trusts in which the trustee held a mere naked or dry trust for the use of the *cestui que trust*, and to vest the title in the beneficiary. And the only question

---

* Insurance Company v. Hallock, 6 Wallace, 556.

to be decided in this connection is whether the deed of Gear to Campbell is of this character.

The bank buys the land of Gear for fifty thousand dollars, the amount of its debt against Gear, which is thereby satisfied. Campbell does not sign the deed or accept the trust otherwise than by silence. If the land is not sold, he holds the naked legal title to the use of the bank and its assigns. The only possible event in which he may be called into action is on a sale of the land. It is equally clear, that in this sale the only part to be performed by him was to make conveyance. He is to sell for such sum or sums as shall be directed by the president, directors, &c., of the bank, and they are to receive the proceeds of sale. In other words, they find a purchaser at such price as they may be willing to take, they receive the purchase-money, and Mr. Campbell makes a conveyance. It is difficult to conceive of a more passive trust, or one in which the trustee may be called upon to do less than in this.

A case decided recently by the Supreme Court of Wisconsin is produced to us in manuscript, and much relied on as holding views adverse to those above stated. But we think it supports them. That court says, that " by the statute of uses and trusts passive trusts are abolished. By passive trusts we mean those which are express, or created by the words of some deed or other instrument of writing, and not those arising or resulting by implication of law. Every express passive trust is abolished, and the deed or instrument by which it is created, or attempted to be, takes effect as a conveyance directly to the *cestui que trust* in whom the legal title vests, and the trustee acquires no estate or interest whatever. A conveyance of land from A. to B. to the use of or in trust for C., the trustee having no active duties to perform, constitutes a passive trust."

We think this is a sound construction of the statute, and that the deed to Campbell comes within it. In the case before the Wisconsin court the trustee was directed to bargain, sell, and convey, to lease, demise, and mortgage the lands as he might be directed by the *cestui que trust*, and to

pay over to her all the moneys arising from said property, whether from rents, sale, or mortgage, and take her written receipt therefor, and to reinvest the same from time to time as she should in writing direct.

There can be no doubt that this trust was an active one, and as little that the one before us was not.

But if this were otherwise, a statute of Wisconsin in force when the land was sold under Corwith's judgment declares, that " lands, tenements, and real estate holden by any one in trust for another, shall be liable to debts, judgments, decrees, executions, and attachments against the person to whose use they are holden." So that if the trust in Campbell was a valid one, these lands were still liable to be sold on execution for the debt of the bank. Nor can it be doubted that such a sale, when lawful in all other respects, and completed by the conveyance of the sheriff, vested in the grantee the legal title to the land.

But it is said, secondly, that conceding the title to have been vested in the bank, that corporation had made a conveyance of the lands, before Corwith's proceedings were instituted, to Manly, Calhoun, and Ridgely, for the benefit of the creditors of the bank and for the payment of its debts.

There is no question that such a deed was made, nor is it denied that a valid deed of assignment, for the benefit of creditors, generally places the property so assigned beyond the reach of the ordinary process of attachment or execution directed against the property of the assignor.

But the deed in question was a peculiar deed, and made under very peculiar circumstances.

Under the circumstances, it cannot be doubted that the effect of this conveyance is to be measured by the terms of the act, and that if any of its provisions are in conflict with that act they must to that extent give way. Now, the very last section of that act, after the previous sections, and, indeed, previous statutes had fully defined the duties and powers of these trustees, declares expressly that " the real estate of said bank shall be liable to taxation and sale on execution in the same manner as the property of individuals." So far,

then, as this conveyance by the bank to the trustees affected the liability of these lands to judicial sale for the debts of the bank, it left them in precisely the same condition they were before, and this whether the deed to Campbell is to be construed as a passive or an active trust, and the title of the bank under it a legal or an equitable one.

It must, therefore, be taken as established that the land in question was liable to be subjected to judicial sale for the debts of the bank, and the only remaining question concerns the validity of the proceeding under which this was attempted.

Most of the objections urged under this head relate to the regularity of those proceedings, and many errors are pointed out which are supposed to affect the title acquired under them. But the doctrine of this court, and of all the courts of this country, is firmly established, that if the court in which the proceedings took place had jurisdiction to render the judgment which it did, no error in its proceedings which did not affect the jurisdiction will render the proceeding void; nor can such errors be considered when the judgment is brought collaterally into question. With this cardinal principle in mind many of the alleged errors in the proceeding under the attachment must be disregarded.

There can be no question of the right of the legislature of Wisconsin to pass such laws as will subject property within her territory, held or owned by non-residents, to the payment of the debts of such owners; and the manner of doing this is also entirely within legislative control, provided it does not violate some of the provisions of the Federal or State constitutions.

The court in which these proceedings were had was a court of general jurisdiction, and had undoubted authority to attach the property of the bank for the payment of its debts, and every presumption must be made in favor of the validity of its proceeding not inconsistent with the record.

We will, however, notice a few of the alleged errors which are supposed to touch the point of the court's jurisdiction.

1. It is said that the bank was dead in law, and that as

the suit was instituted against the bank by name, no jurisdiction was acquired.

It is by no means certain that the bank had no capacity to sustain a suit, notwithstanding the expiration of its charter and the transfer of its property to trustees. But, however this may be, those very trustees, in whom plaintiff claims that the title was vested, and from whom he derives title by deed, appeared to this suit and moved to dissolve the attachment, and the bank appeared by attorney and defended the suit. Both must then be bound by these proceedings, and neither can deny a jurisdiction to which they voluntarily submitted.

2. The legislature of Wisconsin had made provision by special statute for a case in which a bank, whose functions had ceased, but which yet owned property and owed debts in Wisconsin, might be sued and the property subjected to the payment of those debts. The constitutionality of this act is denied; but no provision of the constitution of Wisconsin or of the United States is pointed out which is opposed to such legislation. It would, on the contrary, be a strange defect in the legislative power if, under such circumstances, a State could not frame laws which would enable her citizens to subject the lands of a corporation whose charter had expired to the debts which it owed to her citizens.

3. It is said that the judgment under which this sale was made was reversed, and this is true.

But the sale was made while the judgment was in force to one who was no party to the suit, and the reversal of the judgment could not, as is well settled, affect the purchaser.

4. It is said the sale was void because made under an execution which had no seal.

The court from which the execution issued permitted it to be amended after sale by affixing a seal. Whether the sale would have been void without the seal, and whether the amendment was rightfully made, were questions of Wisconsin law, and this and all other such questions were decided in favor of the sale by the Wisconsin court on motion to set aside the sale. That decision must control us as to all that concerns the regularity of these proceedings.

As we have examined all that can be said to affect the jurisdiction of the court and the authority of the officer to make the sale, we need inquire no further.

JUDGMENT AFFIRMED.