### MANHATTAN LIFE INS. CO. v. JOHNSON et al.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

USURY—CONTRACT MADE IN ANOTHER STATE—MORTGAGE IN STATE.

Where a loan was made in Massachusetts by one resident to another resident thereof, the same to be repaid there, and the contract therefor providing that it should be secured by a mortgage on real estate in New York, the contract is a Massachusetts contract, and, being at a rate legal there, though illegal in New York, the mortgage is not void under 1 Rev. St. (1st Ed.) p. 772, pt. 2, c. 4, tit. 3, § 5, as amended by Laws 1837, p. 486, c. 430, providing that conveyances whereby there shall be secured a greater sum for the loan of money than is above prescribed shall be void.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Usury, §§ 2–15.]

Appeal from Special Term, New York County.

Action by the Manhattan Life Insurance Company against George F. Johnson and others to foreclose a mortgage. From an order of the Special Term, overruling exceptions filed to the report of the referee appointed in surplus money proceedings, and modifying and confirming the report, and directing the city chamberlain to pay to defendant Frederick T. Kellogg the sum of $38,547.30 and a further sum to reimburse him for disbursements and for costs and disbursements, defendant William C. Dewey appeals. Affirmed.

The part of the opinion of the referee bearing on the question of usury, the only question involved on this appeal, is as follows:

"In passing upon the claims of the respective claimants I deem it best to consider first of all the question of usury litigated by William C. Dewey and his judgment creditors against Frederick T. Kellogg. By deed dated May 29, 1902, and recorded on the same day, one Albert Joske conveyed to Kellogg a plot of ground 200 feet square on Alexander avenue, borough of the Bronx, running through from 132d street to the Southern Boulevard, formerly 133d street, subject to a first mortgage of $110,000 (which is the mortgage foreclosed in this action), and a second mortgage of $25,000, then liens on the premises. By deed dated October 31, 1902, and recorded November 7, 1902, Frederick T. Kellogg conveyed to the Kroeger Piano Company not quite one-half of the said premises, subject, however, among other things, to $60,000 of the principal, with the interest to accrue thereon, of a first mortgage of $110,000, held by the Manhattan Life Insurance Company of New York, and to $15,000 of the principal, with the interest to accrue thereon, of another and second mortgage for $25,000, then a lien on said premises and held by George F. Johnson. For convenience sake I shall hereafter refer to the said premises so acquired by the Kroeger Piano Company as parcel No. 2, and the premises of which the title remained in Kellogg as parcel No. 1.

"The claim of usury advanced by Dewey and his judgment creditors is that, as between him and them and Kellogg, the deed by Joske to Kellogg was intended to be, and is to be treated as, a mortgage; that such mortgage was and is usurious and void on the ground that it was given and is held as security for the payment of notes given upon an usurious agreement; and that for that reason the surplus coming to parcel No. 1 should be paid to him (Dewey) after payment of judgments against him.

"The evidence introduced on this point shows the following state of facts: Kellogg at the outset at Springfield, Mass., advanced to Dewey the sum of $25,000 at 6 per cent. interest and without security, repayable at Springfield. Dewey thereafter wanted $25,000 more, and on one occasion Dewey offered him a bonus of $10,000 and on another occasion Kellogg said that in such case he wanted a bonus of $10,000. But nothing came of it, because Kellogg finally declined to advance any more money. Dewey thereafter, at Kellogg's suggestion, applied to Mr. Morse, president of the Second National Bank of Springfield, and also saw a Mr. Pratt, and, after some negotiations, it was agreed that the following loans should be made to Dewey, viz.: By the Second National Bank, $10,000; by Morse individually $7,000, of which $2,000 should be a bonus; by Mr. Pratt $7,000, of which $2,000 should be a bonus; and that Kellogg should allow his $25,000 to remain in the pool, for which he should receive a bonus of $10,000. It was further agreed that as security for the repayment of said sums the deed presently to be referred to should be given by Dewey to Kellogg, who was to hold the title for all parties concerned. On February 1, 1902, Dewey in Springfield gave his notes dated on said day in Springfield and payable in Springfield to the Second National Bank for $10,000, to Morse $7,000, to Pratt $7,000, and to Kellogg $23,000 (of which a note of $10,000 represented a bonus), in addition to which Kellogg then held the joint note of Dewey and his wife, also made, dated, and payable in Springfield, for $12,000. At the time of giving said notes on the day named Dewey also delivered in Springfield to Kellogg a certain deed of property then owned by him on Varick street in the city of New York, and at the same time, at the office of Kellogg in Springfield, an agreement was made in writing to the effect that said Varick street property was to be redeeded to Dewey upon the payment by him of certain notes to the amount of $45,000, with interest (which notes represented the moneys actually loaned and received), and the further payment of $14,000, the amount of certain other notes, provided a certain building proposed by Dewey to be erected should be built and completed by him or sold in an incompleted condition by him. This building, it may be stated here, was subsequently built and caused to be completed by Dewey. At all these times, Morse, Pratt, Kellogg, and Dewey were residents of Springfield, Mass. Shortly thereafter Dewey proposed a substitution of the Bronx property in place of the Varick street property, and this resulted in the deliv-

ery at Springfield to Kellogg of the deed by Albert Joske to Kellogg hereinbefore referred to, bearing date May 29, 1902, and being the same premises which were sold pursuant to the judgment of foreclosure in this action, and in a conveyance of the Varick street property by Kellogg to Joske.

"The evidence further shows that, of the $59,000 of notes, Dewey actually paid to the holders of the respective notes, other than Kellogg, one note of $5,000, and took up one bonus note of $2,000 by payment of $1,000 in cash to Mr. Pratt, and took up one bonus note of $2,000 held by Morse by release of his equity in a piece of property in Seventy-Sixth street, New York, held as security for a different loan by Morse of $5,000 and sold to him for the amount of said loan and cancellation of said bonus note.

"Upon these facts it is clear that the contract between Dewey and Kellogg, which culminated in the delivery to Kellogg of the deed now to be treated as a mortgage, which treatment is conceded by Kellogg to be correct as between Dewey and his creditors and himself, was made and was to be performed in Massachusetts. The general rule applicable to such a contract is that the law of the place where the contract is made, and not that where the action is brought, is to be considered in expounding and enforcing the contract. This has been well stated in the very recent case of Trustees of Brookhaven v. Smith, 98 App. Div. 212, 90 N. Y. Supp. 646, decided by the Appellate Division, Second Department, in November, 1904. Judge Woodward, in writing the unanimous opinion of the court, states the underlying principle as follows: 'It is well settled in our jurisprudence that the laws which subsist at the time and place of making contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to and incorporated in its terms, and that this principle embraces alike those which affect its validity, construction, discharge, and enforcement'—citing numerous United States Supreme Court authorities. To the same effect is the case of the Union National Bank v. Chapman, 169 N. Y. 538, 62 N. E. 672, 57 L. R. A. 513, 88 Am. St. Rep. 614, in which it was held that the rule covered all matters bearing upon the execution, interpretation, and validity of contracts, including the capacity of the parties to the contract.

"The rule, as stated, has always been enforced as to contracts claimed to be usurious. In Curtis v. Leavitt, 15 N. Y. 9, the Court of Appeals concluded that a contract, under which certain bonds issued by a New York party were negotiated and pledged in England, was an English contract, and that the question of usury had to be determined by the then existing laws of England (page 296, prop. 7), and furthermore that a loan, nominally, of $250,000, procured from Philadelphia banks, was a Pennsylvania contract, and that, although it may have been usurious, by the laws of that state, it was inoperative only for the excess of interest over 6 per cent., the lawful interest (page 296, prop. 10). In Willis v. Cameron, 12 Abb. Prac. 245, decided by the General Term of the New York Common Pleas in March, 1861, the action was upon a promissory note, and the defense was that the note was made in violation of the usury laws of a foreign state. By those laws the contract was declared not to be avoided, but, by way of penalty for a violation, a forfeiture of three times the excess of interest reserved was to be allowed in an action on the contract, or, if paid, to be recovered back. It was held that the defendant could not, in this state, avail himself of the penalty even by way of defense. In Wayne County Savings Bank v. Low, 81 N. Y. 566, 37 Am. Rep. 533, decided in September, 1880, the headnotes correctly state the following proposition: 'A party residing in one state, who goes into another state and there makes an agreement with a citizen of that state for a loan, lawful by its laws, but usurious under the laws of the borrower's state, cannot render his obligation void by making it payable in his own state. Nor does the fact that the obligation is executed in the latter state, and sent to the lender by mail, require that it should be governed by the usury laws of the state where it was signed.' In Western Transportation & Coal Co. of Michigan v. Kilderhouse, 87 N. Y. 430, decided in January, 1882, the action was upon renewal notes, and one of the defenses was usury, and it was held that, inasmuch as the contract for forbearance was a Michigan one and was valid under the laws of that state, it was valid and enforceable here. In coming to

that conclusion the court unanimously reaffirmed the rule as stated and enforced in Wayne County Bank v. Low, supra.

"Moreover, in the case of Cutler v. Wright, 22 N. Y. 472, the Court of Appeals unanimously holds, although differing on other points, that: 'A defendant, seeking to avail himself of the defense of usury in an action upon a note dated and made payable in a foreign state, is bound to allege and prove the foreign law which renders the contract usurious. There is no presumption in such a case that the foreign law agrees with our own. * * * It is not set up in the answer that, by the laws of Florida, this contract was usurious, and therefore void. The allegation that it was usurious and void by the laws of the state of New York was an immaterial averment, and in no sense tended to show the usurious character of the transaction by the laws of Florida.' This was referred to in Harris v. White, 81 N. Y. 532, which arose under a statute against racing, and in which the court says (page 544) : 'As a general rule, courts of one state, in the absence of proof and allegations otherwise, will presume that the laws of another state are like those of their own state. It is doubted, however, whether this presumption will be made of statute law. McCulloch v. Norwood, 58 N. Y. 567; Wilcox Co. v. Green, 72 N. Y. 17. It will not be made of statutes imposing a penalty of forfeiture. Cutler v. Wright, 22 N. Y. 472. And it has been declared that a court cannot take notice judicially of any laws of other states not according to the common law. Holmes v. Broughton, 10 Wend. 75, 25 Am. Dec. 536.'

"There is no proof on the part of the claimant Dewey that the contract was illegal at the place where it was made and was to be executed, and as a matter of fact and law the statutes of Massachusetts do not make a contract like the one now under consideration, though tainted with usury, void as to the principal sum. The claim of Dewey and his creditors is therefore limited to the ground that, while the contract was made and was to be performed in Massachusetts, was lawful there, and was made between residents of Massachusetts, the penal usury law of New York applies because as security for the fulfillment of the contract a deed was delivered in Massachusetts of New York property. Unfortunately for Dewey, the authorities bearing upon the real question presented by that claim are also against him.

"De Wolf v. Johnson, 10 Wheat. (U. S.) 367, 6 L. Ed. 343, is directly in point. In that case the question arose whether the lex loci of a certain original contract made in 1815 was Rhode Island or Kentucky. By the usury laws of the latter the contract, and all the securities given for it, were void, both for principal and interest. By the laws of the former, although they prohibited to take more than 6 per cent. interest and imposed a penalty for the offense, the contract was not rendered void, certainly not for the principal sum. Johnson, J., in delivering the opinion of the court, said: 'With regard to the locality of the contract of 1815, we have no doubt that it must be governed by the law of Rhode Island. The proof is positive that it was entered into there, and there is nothing that can raise a question but the circumstance of its making a part of the contract that it should be secured by conveyances of Kentucky land. But the point is established that the mere taking of foreign security does not alter the locality of the contract with regard to the legal interest. Taking foreign security does not necessarily draw after it the consequence that the contract is to be fulfilled where the security is taken. The legal fulfillment of a contract of loan, on the part of the borrower, is repayment of the money, and the security given is but the means of securing what he has contracted for, which, in the eye of the law, is to pay where he borrows, unless another place of payment be expressly designated by the contract. No tender would have been effectual to discharge the mortgage, unless made in Rhode Island. On a bill to redeem, a court of equity would not have listened to the idea of calling the mortgagee to Kentucky in order to receive a tender.' So, in Caesar v. Capell (C. C.) 103, where a citizen of Tennessee and a corporation of Missouri into a contract for a loan of money and its repayment which have been invalid under the laws of Tennessee, but valid under those of Missouri, and by its terms had made it a Missouri contract and to be there performed, it was held that it would be presumed that they intended to be governed by the laws of that

state, and that said contract was not rendered a Tennessee contract by the fact that the debt was secured by mortgage on land in Tennessee.

"In Williams v. Fitzhugh, 37 N. Y. 444, the loans were made and were payable in New York, and the contract to secure the loans by an Ohio mortgage was made in this state. Some of the loans were usurious and void under the laws of New York. The action was brought by the borrower to have six notes declared void and the morgtage discharged or its enforcement enjoined. It was held that the location of the mortgaged premises in another state formed no impediment to the jurisdiction of the New York court, but that, so far as the mortgage was concerned, the plaintiff, having applied to a court of equity for relief, should have been required to pay the amount of the loans not tainted with usury. Cope v. Wheeler, 41 N. Y. 303, was an action on a loan made and payable in New York by residents of New York, secured by a bond and mortgage on property in Wisconsin. The loan was usurious under the laws of New York, and it was held that it was a New York contract, and must be decided by the laws of New York. In the opinion of Judge Woodruff (pages 312–313) he states: 'Nothing is, I apprehend, better settled than that the mere fact that collateral security for the payment of a debt contracted here and payable here is real property situated in another state does not change the place by the laws of which the validity of the contract is to be tested.'

"Dewey and his creditors, however, cite and strenuously urge the decision in Chapman v. Robertson, 6 Paige, 627, as applicable to the present case. The headnote of that case is as follows: 'Where R., a resident of the state of New York, applied to C. at his residence in England for a loan of money, upon the security of a bond and mortgage upon lands in New York, at the legal rate of interest in that state, and it was there agreed that upon the return of R. to New York he should execute his bond and mortgage, and have the mortgage duly recorded in the county where the lands were situated, and that upon the receipt of the bond and mortgage by C. in England he should deposit the money loaned with the bankers of R. in London, for his use, and the bond and mortgage were executed and the money received accordingly, held, that the mortgage was a valid security for the loan according to the laws of New York, and that upon a bill filed there to foreclose the mortgage R. could not set up the usury law of England as a defense to the suit.' The opinion discusses somewhat at length the general principles of the lex loci rei sitæ applicable to purely personal contracts as well as to contracts concerning real property, and towards the end seems to state the real ground of the conclusion reached upon the question presented by the case, as follows: 'It was a contract partly made in this state and partly in England. And, being actually made in reference to our laws, and to the rate of interest allowed here, it must be governed by them in the construction and effect of the contract as to its validity,' etc.   (Page 634.)

"If the facts had clearly been shown to have been as thus stated, the correctness of the decision could not be impugned because it only carried into effect the intention of the parties in making the contract. Perhaps there was sufficient evidence to that effect outside of the instruments executed, and the difficuly simply is that the case was insufficiently reported. At any rate, the fact is that, while the case in numerous instances has been cited and followed and approved upon some general well-settled proposition or other discussed in the opinion (and the many citations to that effect by the learned counsel for Dewey and his judgment creditors are all of that character), it has been doubted and disapproved in cases which directly involved the question of the usury law of the places where the contract was made and was to be performed. It was doubted in the leading case of Curtis v. Leavitt, 15 N. Y. 9, at page 88. It was doubted in Dickinson v. Edwards, 77 N. Y. 573, 33 Am. Rep. 671, in which Folger, J., delivering the opinion of the court, says concerning it (pages 585, 586): 'Chapman v. Robertson, 6 Paige, 627, is a case often cited and relied upon; but it does not impugn the general rule that the validity of a purely personal contract is to be tried by the law of the place of its performance. * * * The opinion in that case has not escaped criticism: "If viewed as the chancellor interpreted the case, it is perhaps irreconcilable with other cases and with general principles." Story on Conflict of Laws, § 293c.

"It appears to me that the case was correctly decided, but  *  *  *  upon principles and expositions to which I cannot assent, and which appear to me inconsistent with the general reasoning of the authorities." Id. note 3. See, also, Curtis v. Leavitt, 15 N. Y. 88, 228.'

"And Chapman v. Robertson was disapproved in Cope v. Alden, 53 Barb. 350. In that case it was held that an agreement for the loan of money, made and consummated in this state by residents thereof, by which the borrower is to give a bond accompanied by a mortgage upon lands in Wisconsin, no place of payment being specified, is governed by the usury laws of New York, and not by those of Wisconsin. In speaking of the case of Chapman v. Robertson, 6 Paige, 627, Mason, J., in delivering the unanimous opinion of the court, says (page 354): 'Whatever may be thought of this case, and its soundness has been questioned by Chancellor Kent in his Commentaries and by Judge Story, it decides nothing in the case before us. It is evident from the opinion of Chancellor Walworth, in the case, that he excepts this case, and indeed seems to hold this contract usurious." etc. And concerning the case of De Wolf v. Johnson, 10 Wheat. (U. S.) 383, 6 L. Ed. 343, Mason, J., says that by it 'it is expressly decided that the lex loci contractus must govern in a question of usury, although by the terms of the agreement the debt was to be secured by a mortgage on real property in another state. The case is cited with approbation in the case of Andrews v. Pond, 13 Pet. (U. S.) 78, 10 L. Ed. 61. The case of Newman v. Kerson, 10 Wis. 333, is directly in point, and decides the very question presented in this case,' etc.

"The same case came before the Court of Appeals under the title of Cope, Administrator of McCraney, etc., 41 N. Y. 303, and in his opinion James, J., says: 'The question was very thoroughly examined in the Supreme Court on a former appeal in this same cause, and an opinion written on that occasion by Justice Mason gave the true exposition of the law on this question, and may well be adopted as the opinion of this court on that question. 53 Barb. 350.' And Woodruff, J., in a concurring opinion, says, at page 313: 'The contract is said to be withdrawn from the operation of our usury laws, because, as claimed, it was made with reference to the laws of Wisconsin, where it is lawful to reserve interest at the rate of 12 per cent. per annum. No doubt it is possible for parties in this state to make a contract of loan or advance with such reference to a foreign law that the latter will govern its construction and legal effect. But that rule does not import that parties, by a mere mental operation, can import the law of another state into this for the purpose of altering the character of a loan made here, and to be here returned without any undertaking or duty to use the money anywhere else, or any understanding that in respect to the use or repayment of the money the loan shall differ from any other.'

"I think it has now been sufficiently shown that the claim of usury in this case is untenable, although under the statutes of New York not only the contract pursuant to which both deeds were given, but the deeds themselves, would have been void, if the contract had been made here and was to be performed here. Indeed, Dewey's case in this respect is not near as strong as the case of the borrower was in Chapman v. Robertson. In the latter case the borrower resided where the real property was situated, in the present Dewey is shown to have been and to be a resident of the place where the contract was made and was to be performed; in the latter the bond specified no place for payment, in the present the notes were expressly made payable at a certain bank in Springfield, Mass.; in the latter the contract was deemed to have been made with reference to and in contemplation of the laws of New York, where the collateral security was valid, though void in England, while in the present it would be preposterous, in the absence of extrinsic proof upon the subject, to suppose for a moment that the shrewd and sharp men dealing with one another at arms' length intended that the validity of the collateral should be judged by New York law under which it would have been invalid, instead of by the law of Massachusetts under which it was valid at least as far as the principal sum. And, finally, it should be borne in mind that the collateral security in this case was a deed absolute on its face, under which Kellogg went into possession and received the rents and profits of the premises; that it was not necessary for him to come to New York in the capacity of a mort-

gagee out of possession and bring foreclosure; and that the surplus in this case stands as a substitute pro tanto for the rights he enjoyed in Massachusetts under his deed, where Dewey would have to make a tender of the amount due in order to entitle himself to a reconveyance."

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Wilbur F. Earp, for appellant.
Arthur S. Luria, for respondent.

PER CURIAM.   Order affirmed, with costs, on opinion of referee.

LAUGHLIN, J. (concurring).   The action was brought to foreclose a mortgage for $110,000 executed by George F. Johnson, who then owned the premises.   One Albert Joske subsequently became the owner of the premises, and at the instance of appellant, Dewey, he conveyed the same to defendant Kellogg as security for money loaned by Kellogg to Dewey in Massachussetts and payable there, but at a rate of interest which would make the loan usurious and void under the laws of New York.   After defendant Kellogg obtained the legal title, and before the foreclosure action was commenced, he conveyed part of the premises to the defendant Kroeger Piano Company.   The decree directed the sale of that part of the premises the title to which remained in Kellogg, designated as "Parcel No. 1," first.   The sale resulted in a surplus.   The referee found that parcel No. 1 was entitled to $38,547.39 of the surplus and parcel No. 2 to $1,752.20 thereof.   There is no controversy over the division of the surplus between the respective parcels; but both the appellant, Dewey, and the defendant Kellogg claim that part of the surplus arising on the sale of parcel No. 1.   At the time the foreclosure action was commenced an action brought by judgment creditors of Dewey against Kellogg, Dewey, and others to have the deed to Kellogg declared a mortgage was pending; and after the sale, but before the surplus money proceedings were instituted, judgment had been duly entered in that action declaring that the deed to Kellogg "was as between Kellogg and Dewey, a mortgage, and that Dewey was the owner of parcel No. 1."

In the surplus proceding Kellogg claimed the fund, not by virtue of ownership of the title, but by virtue of the lien of the judgment in effect declaring his deed a mortgage.   Dewey contested this claim on the part of Kellogg upon the ground that he was the owner of parcel No. 1, and that the loan to Kellogg to secure which he received the deed was usurious, and that therefore the conveyance to him was void under our statute, which declares, among other things, that:

"All conveyances whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, a greater sum or greater value, for the loan or forbearance of any money, goods or other things in action, than is above prescribed shall be void." 1 Rev. St. (1st Ed.) p. 771, pt. 2, c. 4, tit. 3, § 1, as amended by Laws 1879, p. 598, c. 538; 1 Rev. St. (1st Ed.) p. 772, pt. 2, c. 4, tit. 3, § 5, as amended by Laws 1837, p. 486, c. 430.

I agree with the learned referee that the validity of the notes to secure which the mortgage was given is governed by the law of Massachusetts, and that, being valid, these payments could be enforced

here; but I am of opinion that the validity of the deed as security for the indebtedness is to be determined by our statute. On this point the authority of Chapman v. Robertson, 6 Paige, 627, has not, so far as I have been able to discover, been overruled, criticised, or questioned. See, also, McGoon v. Scales, 9 Wall. (U. S.) 23, 19 L. Ed. 545; Boyce v. City of St. Louis, 29 Barb. (N. Y.) 650; Goddard v. Sawyer, 9 Allen (Mass.) 78.

The decree establishing that the deed was given as security for the payment of money, and is in fact a mortgage, is not contained in the record; nor are the pleadings in that action in the record before us. It appears that both claimants to the fund were parties to that action, and are therefore bound by the judgment. Probably the amount for which it was decreed that the deed was given as security was not involved in that action, but it may well be that the deed was held to be valid as security for some indebtedness, and upon this record it cannot be said that it was not so held. It may fairly be inferred that the nature and validity of the instrument was adjudicated in that action. The record shows that Kellogg stands upon the judgment therein. In surplus money proceedings there are no pleadings to embarrass claimants, and the rights of a claimant must be determined on the entire record. I cannot, upon this record, say that Dewey is not precluded by the judgment from questioning the validity of the deed as security, and therefore I concur for affirmance; but, if the record fairly presented the question as to whether a mortgage upon real estate in New York could be upheld as security for a loan made elsewhere, at a rate of interest which would be usurious here, I would be disposed to answer it in the negative.

CLARKE, J., concurs.