SAMUEL W. BATES, EXECUTOR, APPELLANT

*vs.*

DECREE OF JUDGE OF PROBATE.

Hancock.     Opinion, April 25, 1932.

*Robert H. Gardiner*
*Hale & Hamlin*
*Harris H. Gilman,* for plaintiff.
*Clement F. Robinson,* Attorney General, for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

FARRINGTON, J.   On report. One Anna H. Bates died testate on July 9, 1929, resident of Bar Harbor, Maine. Forming a part of her estate were 2,314 shares of Wildes Buildings Trust appraised at $231,400.

On March 10, 1931, the Hancock County Probate Court decreed against the entire estate an inheritance tax of $13,145.70, of which $8,517.70 was paid, leaving unpaid the tax on the above shares amounting to $4,628.00. From this decree an appeal was taken to the Supreme Court of Probate of Hancock County and from thence the case comes to this Court on report.

The single question to be decided is whether or not the interest of the deceased, Anna H. Bates, in Wildes Buildings Trust is property within the State of Maine, and, as such, subject to an inheritance tax under the laws of this State, or, as expressed in the stipulations, "whether that part of the inheritance tax levied on the transfer of these shares is valid."

The executor as appellant claims that the interest represented by these shares is an interest in real estate situated within Massachusetts and is not property within the jurisdiction of the State of Maine and therefore not here taxable.

The appellee contends that the interest is personal property and that its transfer is taxable in this State.

By stipulation of parties it is agreed that the following facts in regard to the Wildes Buildings Trust shall be taken as true:

In 1915 the heirs of one Solomon Wildes, who died in 1867, owned undivided interests in certain real estate inherited from him and situated in Boston, Massachusetts, and in that year, after partition proceedings had resulted in a division of the property, Anna H. Bates aforesaid, a granddaughter of Solomon Bates, together

with another granddaughter and a daughter, became the sole owners of a block on Washington and Friend Streets in Boston.

In order to avoid subjecting the property to any future partition, the three owners on February 1, 1916, entered into a written agreement and declaration of trust to be known as the "Wildes Buildings Trust," and on the same date they conveyed their entire interests in the block to the trustee named in said agreement and declaration by the terms of which shares were issued to them in proportion to their ownership in the real estate as conveyed.

The trust property at that time and at the death of said Anna H. Bates consisted solely of this real estate. The sole trustee from the beginning to the date of the report was and now is Charles W. Whittier, who has at all times had full and complete charge of the property as such trustee. All books of account and records were kept by him in Boston and all transfers of interest were there recorded. The trustee had no property and no activities outside of Massachusetts.

The declaration of trust and the deed of transfer to the trustee, duly recorded in the Registry of Deeds for the county where the land was situated, together formed integral parts of one and the same transaction and must be so considered. That both instruments were executed in Massachusetts can scarcely be questioned and it is conceded by the appellee that the case of an interest held by a Maine decedent under a contract created in Massachusetts operating on Massachusetts real estate presents a conflict of jurisdiction. It is also admitted by appellee that the validity of what may be called a chose in action may depend in large part upon the law of the State of its creation. In reply brief the appellee says, "The estate's final point is that Massachusetts law governs the problem. If the problem were simply a technical question of the kind of ownership which the shareholder has, this suggestion might settle the question." But the contention is made that if the shares under consideration represent interests in real estate they will entirely escape the payment of an inheritance tax by reason of chapter 292 of the Acts of Massachusetts, 1929, in which provision was made exempting from inheritance tax all interests in Massachusetts real estate owned by nonresident decedents represented by

transferable certificate of participation or shares of an association, partnership or trust. This contention seems unimportant in view of the one question confronting us. That such shares have certain outward indicia of corporation shares is obvious, but we must go beyond the outward and apparent form to the law which controls, and in our opinion the determination of the question whether the "shares" involved in the instant case are choses in action or interests in real estate is dependent on and to be governed by the law of Massachusetts, the situs of the real property which was conveyed by the deed of February 1, 1916, and which was the basis of the trust agreement and declaration of that date.

It is a general rule of law, too well settled to require citation of authority, that the *lex rei sitae* controls the title and disposition of real estate.

As far as real estate or immovable property is concerned, the laws of the State where it is situated furnish the rules which govern its descent, alienation and transfer, the construction, validity and effect of conveyances thereof, and the capacity of the parties to such contracts or conveyances, as well as their rights under the same. *Thomson et al* v. *Kyle*, 39 Fla., 582, 23 So. 12, 16; *Lyndon Lumber Co.* v. *Sawyer* (Wis.), 116 N. W., 255.

"It is a principle too firmly established to admit of dispute at this day, that to the law of the State in which land is situated must we look for the rules which govern its descent, alienation, and transfer, and for the effect and construction of conveyances." *McGoon* v. *Scales*, 9 Wall., 23; *De Vaughn* v. *Hutchinson*, 165 U. S., 566, 570.

"The validity and construction, as well as the force and effect, of all instruments affecting the title to land, depend upon the law of the State where the land is situated. This rule includes wills, as well as deeds, contracts, or agreements; . . ." *Harrison et al* v. *Weatherby et al*, 180 Ill., at page 435, 54 N. E., at page 239. See also *Peet* v. *Peet et al*, 229 Ill., 341, 82 N. E., at page 378.

"To say that the intention of the maker of an instrument is to be determined by one law or set of rules, and that its construction is to be by another and different law or set of rules, is contra-

dictory and absurd." *Harrison et al* v. *Weatherly et al*, supra; *Peet* v. *Peet et al*, supra.

"Whether a person has an equitable interest in land is determined by the law of the State of the situs." Re-statement Conflict of Laws, American Law Institute, Section 260.

"Whether the interest of the beneficiary of a trust of land is to be treated as real estate or whether because of a direction to sell the land it is to be treated as personalty is determined by the law of the State of situs." Re-statement Conflict of Laws, Section 265, *supra*.

In *Williams et als* v. *Inhabitants of Milton*, 215 Mass., 1, the Court reviews a number of Massachusetts cases relating to so-called trust arrangements and agreements and seems to make the test as to whether there is a trust or partnership depend upon whether the trustee or the certificate holder is in control. If the trustee holding the property has the right to manage it free from interference and instructions from the certificate or shareholders, it is a trust; but if such holders are the principals whose instructions in the management are to be obeyed by the trustee as an agent, it is a partnership. See *Narragansett Fire Ins. Co.* v. *Burnham et al* (R. I.), 154 Atl., 909 (1931).

Under the original trust agreement in the instant case, it was provided that "the trustee shall have full control over and exclusive management of the trust property," enumerating incidental powers in particular which show the intent of the parties to the trust instrument to make that control and management full and exclusive in fact. There was a provision that the trustees should have the power, with the assent of the majority in interest of the shareholders, either by a vote at a meeting or by an instrument in writing, to sell or mortgage the whole or any part of the trust property and to purchase other real estate in Boston and to issue additional shares of the trust in payment for property purchased or for other purposes of the trust.

By an amendment adopted June 20, 1922, it was provided as follows: "The shareholders shall have no control over the acts of the trustee hereunder, anything in this Agreement to the contrary notwithstanding and any provision in this Agreement whereby the

shareholders are given any control, *except as above stated*, is hereby annulled. The trustee may at any time by an instrument in writing assented to by three-fourths in interest of the shareholders and recorded in said Registry of Deeds alter or amend this Agreement, or appoint a new or additional trustee or trustees under this instrument and if the office of trustee is vacant said vacancy may be filled by an instrument in writing signed by three-fourths in interest of the shareholders and recorded as aforesaid."

Section 12 of the original agreement left intact, except as far as affected by the provisions of the June 20, 1922, amendment, *supra*, provided for shareholders voting at meetings which could be called in a specified way; that they might authorize action not provided for on the part of the trustee; that they might direct the trustee to terminate the trust and sell the trust property and distribute the proceeds among the shareholders or to convey the trust property to new or other trustees under a new declaration of trust, or to a corporation, as they might direct, and that the trustee should obey such directions; that they had authority to appoint a trustee or trustees to succeed to the title of the former trustee and to become a party or parties to the instrument. Some of the Massachusetts cases in which similar provisions were found, but in combination with other facts which showed a considerable degree of control of management on the part of the shareholders, have held that a partnership was created rather than a trust, but after a careful examination of the entire trust agreement in this case as amended and in the light of the case of *Williams et als* v. *Inhabitants of Milton,* supra, we are unable to see any real conflict with the right of the trustee to manage the property free from interference and instruction from the shareholders. While it is true that the language of Section 12 gives to the shareholders certain rights which might be necessary for their protection or benefit, we are unable to see how those provisions take the case out of the rule laid down by the Massachusetts case above cited. The management of the property is clearly within the control of the trustee at all times and by the trust agreement intended so to be and we see no reason under our interpretation of the above cited case to hold otherwise than that the Wildes Buildings Trust is a trust and not a partnership. By

the natural interpretation of the terms of the agreement, the trustee was clearly master of and in control of the situation so far as the actual management of the property was concerned. That he did have such control is practically admitted in argument and by stipulation.

The Massachusetts rule as to partnership real estate is that in so far as it is necessary to pay the debts of the firm, partnership real estate is personalty, but that for all other purposes it is real property. *Dana* v. *Treasurer & Receiver General et al*, infra.

In the case of *Priestley* v. *Treasurer & Receiver General*, infra, one Charles H. Priestley, domiciled in England, died in France, owning shares in the Warren Chambers Trust. The Court held that the trust agreement in the trust created a partnership as distinguished from a pure trust. The Court in that case said, "Under the Massachusetts rule, while partnership real estate is personalty so far as necessary to pay the debts of the firm, it is real property for all other purposes. The decedent, as one of the partners, had a beneficial or equitable interest in the real estate of the Warren Chambers Trust; and however that interest may be defined, it was 'real estate within the Commonwealth, or any interest therein,' and as such was subject to a succession tax. . . ."

This decision was prior to 1929 exemption statute to which reference has been made in this opinion. Under the Massachusetts law, therefore, it would seem that the same result would be reached, whether the trust agreement created a partnership or a trust.

The case of *In re Stephenson's Estate*, 171 Wis., 452, 177 N. W., 579, cited as authority for holding as personalty such shares as are under consideration, was one in which the trust property consisted of both real estate and personal property. It is not clear whether under the trust arrangement the doctrine of equitable conversion was applicable or not. If it had been applicable, the shares, under the Massachusetts decisions, would have been held as personalty, just as regarded by the Court in the Wisconsin case, *supra*, which refers to the cases of *Dana* v. *Treasurer & Receiver General*, and *Priestley* v. *Treasurer & Receiver General*, infra, as sustaining its conclusion. It is true that the same result was reached. but the reasoning of the Wisconsin case seems to be that the shares.

must be regarded as intangibles "because the creators of the trust have made them intangible or personal property in unmistakable terms."

Under our conclusion that the Massachusetts law governs the decision of the question before us, we do not regard the language of the declaration of trust here involved as controlling and we can not accept either the conclusion of the Wisconsin case or its reasoning as applicable to this case.

By the terms of the Wildes Buildings Trust agreement, the trust was to continue until twenty years after the death of the last survivor of certain named persons and at its termination the trustee was to sell the trust property and divide the net proceeds of the sale and all other property of the trust then in his possession among the then shareholders in proportion to their respective interests. The appellee apparently places no reliance on the doctrine of equitable conversion as a reason why these shares must be regarded as personal property. The contention that they must be so regarded seems to be based largely on the fact that the shares themselves on their face resemble corporation shares, that the language of the trust agreement seems to make them personalty, and that, if Maine can not tax them, they will go untaxed.

The question of whether real property, by the terms of the will, is equitably converted into personalty depends upon the law of the place where the property is located, and not upon the law of the testator's domicile, 5 R. C. L., Sec. 113, page 1204; *Clarke* v. *Clarke*, 70 Conn., 195, 39 Atl., 155, affirmed and approved in *Clarke* v. *Clarke*, 178 U. S., 186; *Holcomb* v. *Wright*, 5 App. D. C., 76, at page 86; *Butler* v. *Green*, 65 Hun, 99, at page 107, 19 N. Y. Supp., 890, 894; *Ford* v. *Ford et al*, 80 Mich., 42, 44 N. W., 1057; *In re Loyd's Estate*, 175 Cal., 699, 167 Pac., 157; *In re Berchtold*, Chancery Div., The Law Times Reports, Vol. 128, page 591; principle recognized in *Hawley* v. *James*, 7 Paige, 213, 219 (N. Y.); *Guaranty Trust, etc., Co.* v. *Maxwell* (N. J.), 30 Atl., 339, 341; Re-statement Conflict of Laws, American Law Institute, Sec. 228A.

In cases where the situation results from a conveyance of land to a trustee by deed, we see no reason why the above rule relating to wills should not be applied.

In *Dana* v. *Treasurer & Receiver General*, 227 Mass., 562, the property of the trust consisted of both real and personal property and the question of equitable conversion was discussed and held applicable and the shares, belonging to a resident decedent, were held to be personal property, and under the law were subject to inheritance tax.

The same principle was applied in *Priestley* v. *Treasurer & Receiver General*, 230 Mass., 452, where there was both real and personal property, and the shares, belonging to a nonresident decedent, were regarded as personalty and under the law not subject to inheritance tax.

In *Baker et al* v. *Commissioner of Corporations and Taxation*, 253 Mass., 130, the trust under consideration consisted entirely of real estate. In that case it was held that the doctrine of equitable conversion did not apply, the Court saying, "The question remains as to the nature of the interest of the testatrix as a certificate holder in a trust consisting wholly of real estate. It is plain that under our decisions it constitutes an equitable interest in land. . . . The interest of a *cestui que* trust in a real estate trust is rightly described as equitable. The statute imposes the excise upon 'any interest' in real estate. Those words are broad enough to include the kind of interest shown on this record to have been owned by the testatrix at the time of her death." In this case the testatrix died a resident of Rhode Island holding shares in what was agreed by parties to be a trust established by deed and the shares were held subject to succession tax as interests in real estate in Massachusetts. The case was decided prior to the 1929 law exempting such interests from payment of inheritance tax but it must still be regarded as the law in determining whether such shares are personalty or whether they represent and are rights in real estate. With the fact that Massachusetts does not exact a tax from a nonresident decedent owner of such shares we are not concerned.

That real estate or tangible personal property situated in Massachusetts and owned by a decedent resident of the State of Maine is not subject to an inheritance tax by the latter State is obvious, and, as it is so conceded by the appellee, that point need not be discussed.

Our conclusion being that we are bound by the Massachusetts law in determining the question before us, we hold that the Wildes Buildings Trust is a trust and not a partnership and that the shares under consideration represent an interest in real estate and that for that reason they are not subject to an inheritance tax in Maine.

*Case to be remanded to the Supreme Court of Probate for further action in accordance with this opinion.*