Joseph **MANELLA**, Plaintiff,

v.

**BROWN COMPANY**, Defendant.

Civ. A. No. 80–2370–MC.

United States District Court, D. Massachusetts.

May 5, 1982.

Anthony F. Muri, Richard P. Jacobson, Levy, Goodman, Semonoff & Gorin, Providence, R.I., for plaintiff.

Robert W. Mahoney, Hale & Dorr, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

McNAUGHT, District Judge.

This matter came on to be heard on the parties' cross-motions for summary judgment. At the hearing the court read into the record a summary of the positions of the parties. Both counsel agreed to the accuracy of the summary; it, in substance, read as follows:

This matter is before the court on cross-motions of the parties for summary judgment. The dispute in this case centers on a lease agreement between the plaintiff and Brown Company (Brown). Plaintiff contends that under the terms of the agreement he had a right to purchase the premises leased by him for an amount substantially smaller than the price at which it was offered to him.

By way of stipulation, Boise Cascade Corporation (Boise), the current owner of the premises in question, agreed to be substituted as the defendant in this case and to assume liability for any claims the plaintiff has against Brown, James River Delaware or James River Virginia. Plaintiff released any claims he has or had against those three corporations.

By the terms of the lease agreement, plaintiff had the right of first refusal when defendant was prepared to accept a *bona fide* offer for the sale of the premises leased by plaintiff. Plaintiff asserts that he was entitled by the terms of the agreement to purchase the premises at the identical price and on the same terms as Boise Cascade. The price at which the premises were offered to plaintiff was $115,000, allegedly based upon an appraisal done by James W. Sewall Co. That appraisal, says plaintiff, was based on the premises being used for house or cottage lots.

For use as timberland, Boise Cascade purchased 348,000 acres of real estate in Maine, Vermont, and New Hampshire, including the premises leased to the plaintiff, for a price of $71.8 million, which equals approximately $206.00 per acre. The price at which the leased premises were offered to plaintiff was approximately $3,285 an acre. Plaintiff seeks summary judgment that he is entitled to purchase the premises at the same price paid by Boise Cascade.

Defendant has moved for summary judgment. It argues that the lease upon which the plaintiff relies had expired and that it was not then bound by the terms of the lease. Boise Cascade also contends that the "automatic" one year extension provision of the lease required (1) a request from plaintiff to renew the lease, (2) mutual consent of the parties, and (3) signing of an addendum to the lease by both parties. Since none of those conditions were met, says defendant, the lease expired on August 31, 1980.

Secondly, defendant argues that even if the lease was in effect, it was not required to sell the premises at the price plaintiff is willing to pay. The offer made by Boise Cascade was for 348,000 acres, not solely for the 35 acres leased to the plaintiff. For that reason, defendant says that no *bona fide* offer was made to purchase the specific 35 acres. Paragraph 12, giving plaintiff right of first refusal, was not triggered.

Since there was no obligation under the lease to sell the leased land to the plaintiff, the offer made in September and October of 1980 represents an offer independent of the lease, says the defendant.

Finally, defendant argues that even if it was obligated by the terms of the lease to offer the leased premises to the plaintiff, it did make such an offer which was refused by the plaintiff. Contending that the method by which plaintiff arrived at the price he is willing to pay is contrary to law and that determination of the fair price involves factual determination, defendant asks that plaintiff's motion for summary judgment be denied.

Plaintiff contends that the lease did not expire on August 31, 1980. He argues that the extensions were automatic and did not depend upon the conditions which defendant says had to be met for the extensions to occur. He further argues that the defendants have shown by their conduct after August 31, 1980 that the lease did not expire on that date.

Plaintiff asserts that the offer made by defendant to him constitutes a recognition by the defendant of its obligation under Paragraph 12 of the lease.

Finally, the plaintiff contends that his method of determining the purchase price is well-supported by case law and is appropriate on the facts of this case.

The motions present several questions for determination by the court: (1) When did the lease between the plaintiff and Brown Company expire? (2) When, if at all, did the plaintiff's right of first refusal arise? (3) If the right of first refusal was activated by Brown's willingness to sell the 348,000 acre tract, did the defendant's offer to sell the 35 acre tract for $115,000 meet the requirements of the lease? (4) If not, what remedies are available to the plaintiff?

Since the property which is the subject of the lease in question is located in the State of Maine, this court must apply the laws of that state in determining rights relating to that property. *See Ross v. Ross*, 129 Mass. 243 (1880); Restatement (Second) of Conflict of Laws § 222 comment e (1971);

*Bates v. Decree of Judge of Probate*, 131 Me. 176, 160 A. 22 (1932).

## I.

By its terms, the lease expired on August 31, 1980, unless it was extended (Lease, fourth unnumbered paragraph). It provided for "automatic" extension for one year upon mutual consent of the parties, which extension was to be executed by an appropriate addendum, signed by both parties, witnessed, and attached to the lease. The fifth unnumbered paragraph of the lease, which contains the extension provision, reads as follows:

The term of this lease shall be automatically extended for one year upon each anniversary date hereof by mutual consent of the parties hereto, at which time the rent to be paid for the last year of the new three-year term shall be negotiated. Only by mutual consent shall established rents for the first two years of each new three-year term be renegotiated. Said annual extension of this lease shall be executed by an appropriate addendum to be mutually signed, witnessed and attached hereto.

Those words cannot mean nothing. They require positive, assertive conduct by the parties. Without such action as provided for in the above quoted paragraph, there was no extension of the lease.

The plaintiff argues that by its conduct since the summer of 1980, the defendant has shown that the lease did not expire on August 31, 1980. Plaintiff appears to be arguing that the defendant's conduct after that date amounts to a waiver of the requirements of the fifth unnumbered paragraph of the lease. The Supreme Judicial Court of Maine has stated:

Waiver is a voluntary, intentional relinquishment of a known right. It may be shown by words or acts, and may arise from inferences from all the attendant acts as well as from express manifestations of purpose. Whether there has been a waiver established when it is to be implied from numerous acts is usually a question of fact.

*Medomak Canning Co. v. York*, 143 Me. 190, 195, 57 A.2d 745, 748 (1948).

The questions of whether or not the lease had expired and whether or not the defendant's conduct amounted to a waiver of the conditions of the lease are, therefore, questions of fact, incapable of resolution on a motion for summary judgment.

## II.

■ The determination of when, if at all, the plaintiff's right of first refusal arose is also a factual question which cannot be resolved by the court at this time. The relevant language regarding when the plaintiff's right of first refusal became effective is contained in Paragraph 12,

> However, should Lessor *be prepared to accept* a bona fide offer for the sale of said premises, or any portion thereof, then Lessor shall first offer to the Lessee the premises, or portion thereof, for the identical amount and under the same terms. (Emphasis added).

The question of when the defendant was prepared to accept Boise's offer to purchase the 348,000 acre tract is one to be answered by the trier of fact.

## III.

■ I do hold, however, that even if the defendant was prepared to accept a bona fide offer for the 348,000 acre tract while the lease was in effect, the plaintiff would not be entitled to specific performance. I feel that the Supreme Judicial Court of the State of Maine, if confronted with the issue, would agree with the decisions which have held that a lessor's offer or willingness to sell a larger parcel of land which includes a smaller tract leased to a lessee and subject to a right of first refusal by the lessee, does not require the lessor to sell the smaller tract separately to the lessee. *Guaclides v. Kruse*, 67 N.J.Super. 348, 170 A.2d 488 (1961); Annot., 170 A.L.R. 1068 (1947). Those cases have held that specific performance is not available to the lessee in such situations. *Id.; But see Brenner v. Duncan*, 318 Mich. 1, 27 N.W.2d 320 (1947); *Berry-Iverson Co. of North Dakota v. John-*

son, 242 N.W.2d 126 (N.D.1976). Those decisions which hold that specific performance is not available to the lessee recognize, however, that a lessor's offer to sell a larger parcel of land cannot operate to impair or destroy the preferential right of the lessee of a portion of that tract to purchase the demised premises. Those courts have granted injunctions to the lessees forbidding sale of demised premises to anyone but the lessee. *E.g. Guaclides v. Kruse, supra.* I hold, then, that even if the plaintiff can establish that the defendant was prepared to accept a bona fide offer while the lease was in existence, he would not be entitled to specific performance. He might, however, be entitled to some form of injunctive relief.

## IV.

■ In this case, Brown did make an offer to sell the demised premises to the lessee. Whether or not that offer met the requirements of Paragraph 12 of the lease is another question of fact which precludes the granting of summary judgment.

Since the resolution of the issues presented by the cross-motions for summary judgment involve questions of fact, both motions must be and are hereby denied.